RELATED DDJ

**FILED**

CLERK, U.S. DISTRICT COURT

09/23/2021

CENTRAL DISTRICT OF CALIFORNIA

BY: _____ DVE _____ DEPUTY

-NO CV-30

ROBERT LACAMBRA
INDIGENT LITIGATOR
NO CURRENT ADDRESS
robertsjustice@live.com

IFP SUBMITTED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ROBERT LACAMBRA,<br><br>Plaintiff<br><br>    v.<br><br><br>REPUBLIC OF THE PHILIPPINES,<br>PHILIPPINE CONSULAR GENERAL<br>OF SAN DIEGO (in his official<br>and personal capacity),<br>PHILIPPINE HONORARY CONSULAR<br>GENERAL OF LOS ANGELES ( in<br>his official and personal<br>capacity), ROES 1-20<br>INCLUSIVE<br><br>Defendants | CASE NO. 8:21-cv-01563-JWH-(MAA)<br><br>**VERIFIED COMPLAINT**<br><br><br>28 U.S. CODE § 1330 – FSIA<br>FOREIGN SOVEREIGN IMMUNITY ACT<br><br><br>BENCH TRIAL COMPULSARY |

1

# TABLE OF CONTENTS

INTRODUCTION ........................................................ 6
JURISDICTION AND VENUE ............................................. 8
THE PARTIES TO THIS ACTION ......................................... 9
PLAINTIFF .......................................................... 9
DEFENDANTS ........................................................ 10
GENERAL ALLEGATIONS ............................................... 11
CHRONOLOGY OF EVENTS .............................................. 14
DISCUSSION AND ANALYSIS OF ISSUES ................................. 29
PHILIPPINES BLOCK ROBERT'S RETURN BECAUSE HE IS HOMELESS ....... 29
CANCELLED APPOINTMENT AND FURTHER DELAYS .......................... 31
THE COVID-19 PANDEMIC EXCUSE TO DENY APPLICATION .............. 34
ALTERNATIVE DOCUMENTS PRESENTED WERE ADEQUATE .................. 40
UNREASONABLENESS OF EMERGENCY TRAVEL DOCUMENT REQUIREMENTS ... 42
CONSULAR FACILITIES REGARDED AS SOVEREIGN ..................... 44
COMMERCIAL ACTIVITY AN EXCEPTION TO CONSULAR IMMUNITIES ....... 45
CONSUL OFFICIALS' DUTY TO AID FILIPINOS IN DISTRESS ........... 47
MALICIOUS, OPPRESSIVE AND FRAUDULENT CONDUCT ...................... 50
EXTREME AND OUTRAGEOUS CONDUCT ................................ 51
DEFENDANTS' APPOINTMENT CANCELLATION UNFAIR UNDER UCL LAWS .... 52
ROBERT'S RIGHT TO EQUAL PROTECTION CLEARLY VIOLATED ........... 54
COLOR OF LAW VIOLATION ARISING FROM DIPLOMATIC PRIVELEGES ... 56
FEDERAL FINANCIAL AID PROHIBITS DISCRIMINATORY PRACTICES ...... 58

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION
(Fraud – California Civil Code 1709 § 1710) ................. 59
SECOND CAUSE OF ACTION
(Negligence – California Civil Code § 1714(a)) ............. 62
THIRD CAUSE OF ACTION
(Negligent Infliction of Emotional Distress) .............. 63
FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress) ............. 64
FIFTH CAUSE OF ACTION
(Unruh Civil Rights Act – California Civil Code § 51) ...... 65
SIXTH CAUSE OF ACTION
(Bus & Prof Code § 17200 – Calif Unfair Competition Laws)........ 66
SEVENTH CAUSE OF ACTION
(42 U.S. Code § 1983 – Civil action for depriv of rights)........ 67
EIGHTH CAUSE OF ACTION
(42 U.S. Code § 2000d – Prohibition against exclusion) .......... 69

REQUEST FOR RELIEF ............................................... 71
BENCH TRIAL COMPULSARY ........................................... 72
VERIFICATION ..................................................... 73

TABLE OF LAWS

**FEDERAL STATUTES**

28 US CODE § 1330 ............................................. 8,9,44,45,47,72
28 US CODE § 1331 ................................................................. 8
28 US CODE § 1350 ................................................................. 8
28 US CODE § 1367 ................................................................. 9
28 US CODE § 1603 ............................................................ 44,46
28 US CODE § 1603(a) ........................................................... 46
42 US CODE §1983 ..................................................... 5,8,56,57,58
42 US CODE §2000d ...................................................... 5,8,59,69

**STATE STATUTES**

BUS & PROF CODE § 17200 .................................................. 66,67
CALIFORNIA CIVIL CODE § 51 ........................................... 5,10,65
CALIFORNIA CIVIL CODE § 1709 ......................................... 5,59,60
CALIFORNIA CIVIL CODE § 1710 ......................................... 5,59,60
CALIFORNIA CIVIL CODE § 1714(a) ........................................ 5,62
CALIFORNIA CIVIL CODE § 3294 ........................................... 5,71

**CALIFORNIA COMMON LAW**

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ................... 5,51,64
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ...................... 5,63

**TREATISE**

VIENNA CONVENTION ........................................................ 8,44
VIENNA CONVENTION OF 1963 – ARTICLE 31 ............................... 44

**CASE LAWS**

ANDERSON V. WARNER,
451 F. 3d 1063 - Court of Appeals, 9th Circuit (2006)  ............... 57

CHRISTENSEN V. SUPERIOR COURT,
820 P. 2d 181 - Cal: Supreme Court (1991)  ................. 51

DANG VANG V. VNG XIONG X TOYED,
944 F. 2d 476 - Court of Appeals, 9th Circuit (1991)  ............... 57

FLORER V. CONGREGATION PIDYON SHEVUYIM, NA,
639 F. 3d 916 - Court of Appeals, 9th Circuit (2011)  ............... 57

HUGHES V. PAIR,
209 P. 3d 963 - Cal: Supreme Court (2009)  ................. 51

JOHNSON V. KNOWLES,
113 F. 3d 1114 - Court of Appeals, 9th Circuit (1997)  ............... 57

McDADE V. WEST,
223 F. 3d 1135 - Court of Appeals, 9th Circuit (2000)  ............... 57

POLK COUNTY V. DODSON
454 US 312 - Supreme Court (1981)  ................. 57

POTTER V. FIRESTONE TIRE & RUBBER COMPANY,
863 P. 2d 795 - Cal: Supreme Court (1993)  ................. 47,55

UNITED STATES V. CLASSIC,
313 US 299 - Supreme Court (1941)  ................. 57

WEST V. ATKINS,
487 US 42 - Supreme Court (1988)  ................. 57

1.     May it please the court, Plaintiff Robert Lacambra,
hereinafter referred to as ROBERT, brings this civil action
against Defendants Republic of the Philippines a sovereign nation
hereinafter referred to as "PHILIPPINES," the Philippine Consul
General of San Diego, hereinafter referred to as "CONGEN/SD, the
Philippine Consul General of Los Angeles, hereinafter referred to
as "CONGEN/LA" and hereinafter referred to collectively as
"DEFENDANTS.

2.     Plaintiff invokes federal and state causes of action
including:

     1. Fraud - California Civil Code 1709 § 1710

     2. Negligence - California Civil Code § 1714(a)

     3. Negligent Infliction of Emotional Distress

     4. Intentional Infliction of Emotional Distress

     5. Unruh Civil Rights Act – California Civil Code § 51

     6. 42 U.S. Code § 1983 – Civil action for deprivation of
       rights

     7. 42 U.S. Code § 2000d - Prohibition against exclusion
       from participation

     8. California Civil Code § 3294 – Punitive Damages

3.     Plaintiff sues defendants individually and severally and
seeks the court's equitable powers to make available for him the
opportunity to seek justice, to right a wrong and to heal. He
alleges upon information and belief, except as to allegations
against him, as follows:

4.     ROBERT sues defendant(s) individually and severally and
seeks the court's equitable powers to make available for him the

1  opportunity to seek justice, to right a wrong and to heal. He

2  alleges upon information and belief, except as to allegations

3  against him, as follows:

4

5                          **INTRODUCTION**

6  5.    This case is about a homeless man who needs to return to

7  the land of his birth, but is unable to. He is being denied entry

8  to his native Philippines because of his homelessness here in the

9  USA. Thus far, representatives of the Philippine government

10  have:

11      1. Delayed his assistance, ignored appointment requests.

12      2. Scheduled an appointment 30 days out, without good

13         cause.

14      3. Cancelled the appointment effectively at the last

15         minute causing travel cancellation fees.

16      4. Claimed that an email about the appointment was never

17         sent/received by/from a colleague.

18      5. Insisted that ROBERT return for another appointment

19         despite presenting all documents for a replacement

20         passport.

21      6. Deceitfully used COVID-19 as an excuse for denying his

22         request to obtain a replacement passport.

23      7. Deceitfully pretended his middle name could not be read,

24         denying his replacement passport application.

25      8. Deceitfully pretended the names ROBERTO on a birth

26         certificate and ROBERT on a California ID was enough to

27         deny the reissuance of a replacement passport.

28      9. Deceitfully pretended that all the information they need

1          to grant his replacement passport application do not

2          exist in their databases, considering his request is for

3          the replacement and not a new issuance.

4

5   6.    After some 40 years of residence in America, almost 13

6   years as a homeless individual, it was time to make a change.

7   Change, they say, is difficult and often only happens because

8   there is no other choice. The death of his mom in December of

9   2020 hit him unexpectedly hard, causing the loss of all his jobs,

10  that which for a while sustained his indigent lifestyle. It was

11  yet another reversal in his life that reminded him it was time

12  for something new. A glaring and undeniable reason was that his

13  mom's estate needed to be settled. The only thing was, he needed

14  to go half-way around the world to do so.

15  7.    Before his mother's passing, the idea of returning to his

16  old country had never even crossed his mind. The last time he was

17  in the Philippines was in the early eighties. Life is strange

18  that way, it is often sprinkled with serendipitous events that

19  lead us somewhere we had not even dreamed of. Looking at it, his

20  return appears to be a logical step to bring him closer to an

21  inspiring change he had been seeking. Here in America, he lives

22  in a broken down and non-drivable 1990 GMC Suburban parked behind

23  a liquor store in the city of Orange. Over the years he has lost

24  just about everything and has practically nothing except a few

25  belongings that are necessary for his unique work and life

26  situation. There in his old country, his mom left him some land

27  which he can make of something valuable, to cultivate or develop

28  or even sell. Until he makes such a decision, he will have

7

1   something, sweet-scented dirt underneath his feet that he can say

2   is entirely his.

3   8.     Now that his return is required, he is being hampered by

4   his old government. They have created barriers and excuses that

5   serves as nothing more than an enormous impediment to his return.

6   Laws of every nation instills upon its people certain rights,

7   including the right to travel freely, especially to his country.

8   It is a right he feels that he is being deprived of, and that he

9   wishes to reclaim, with the assistance of this honorable court.

10

11                       **JURISDICTION AND VENUE**

12  9.     This US District Court, Central District of California has

13  subject matter jurisdiction over this action pursuant to 28 USC §

14  1330 because the Defendants in this action include a foreign

15  sovereign and their officers who in the course of commercial

16  activity committed torts in the meaning of US laws, and violated

17  a treaty with the United States of America.

18  10.    This US District Court, Central District of California has

19  subject matter jurisdiction over this action pursuant to 28 USC §

20  1350 because the Defendants in this action include a

21  foreign sovereign and their officers who in the course

22  of commercial activity committed torts while within the premises

23  of a consulate, premises defined as foreign sovereign in the

24  meaning of the Vienna Convention on Consular Relations.

25  11.    This US District Court, Central District of California has

26  subject matter jurisdiction over this action pursuant to 28 USC §

27  1331 because of a federal question arising from 42 USC §1983

28  and 42 USC §2000d, in particular for prohibitions on civil rights

deprivations and discriminatory practices by entities that
receive federal financial funds, respectively.

12.   The US District Court, Central District of California has
supplemental jurisdiction over this action pursuant to 28 USC §
1367, for violations of state statutes and common law, and
whereby the causes of action are so inextricably linked with
all other violations alleged.

13.   Furthermore, DEFENDANTS conduct their consular businesses
in the cities of Los Angeles and San Diego California. DEFENDANTS
have had sufficient contact in this district such that the
exercise of jurisdiction would be consistent with traditional
notions of fair play and substantial justice.

14.   Plaintiff individually seeks relief that is within the
jurisdictional limits of this court, which will exceed the amount
of $75,000 including reimbursement damages, attorneys' fees, or
any other element of damages sought in this lawsuit. However, 28
USC § 1330 does not have a monetary value requirement for suits.

**THE PARTIES TO THIS ACTION**

**PLAINTIFF**

15.   PLAINTIFF ROBERT is a homeless litigator who resides in a
broken down and non-drivable 1990 GMC Suburban parked behind a
liquor store in the City of Orange, California. For the purpose
of his advocacy, he is a patron of public libraries, cafes and
public spaces where all of his attorney work-product is
produced.

16.   He founded the organization @RobertsJustice, to
perpetuate his lifelong goal of making available "universal

1   justice," a condition in jurisprudence that guarantees

2   the aggrieved always prevails irrespective of their social status

3   or financial condition.

4

5                          **DEFENDANTS**

6   17.   The Republic of the Philippines ("PHILIPPINES") is a

7   foreign sovereign in the meaning of all treatise and

8   international conventions. It is an archipelago that is situated

9   in Southeast Asia. It has a land area of 120,000 sq. miles

10  comprising approximately 7,600 islands. It has a population

11  of approximately 110 million people referred to as Filipinos.

12  18.   On December 10, 1898, the entire Philippine Island chain

13  was ceded to the United States of America by the Kingdom of Spain

14  to conclude the Spanish-American War. It was annexed as a

15  commonwealth of the USA after disbursing payment in the amount

16  of $20M to Spain, from which an American civilian government

17  was immediately established.

18  19.   On December 7, 1900, in clarification of a previous

19  agreement, the Kingdom of Spain relinquished titles of Cagayan,

20  Sulu and Sibutu, areas situated in the Southern Philippines and

21  all its outlying islands and islets to the United States upon

22  disbursement in the amount of $100,000.

23  20.   On July 4, 1946, ten months after the conclusion of the

24  Second World War, the United States granted the Philippine

25  Islands full independency in accordance with the Philippine

26  Independence Act (Tydings-McDuffy Act). On the same day,

27  President Harry S. Truman issued Proclamation 2695 formally

28  recognizing its independence.

                          10

21.   On August 30, 1951, the Philippines and the United States of America signed a treaty entitled "Mutual Defense Treaty." It provides in relevant parts:

> "*Desiring further to strengthen their present efforts for collective defense for the preservation of peace and security pending the development of a more comprehensive system of regional security in the Pacific area.*"

22.   DEFENDANT PHILIPPINES is recognized as an independent sovereign nation by the United Nations, its member states and the international community.

23.   DEFENDANT CONGEN/SD is the Honorary Consular General for the Republic of the Philippines in the City of San Diego, California.

24.   DEFENDANT CONGEN/LA is the Consular General for the Republic of the Philippines in the City of Los Angeles, California.

25.   ROBERT is informed and believes that there were at least 8 individuals that he personally interacted with, or were recipients of forwarded emails.  There were at least that many more who were involved in the decision, planning and execution of DEFENDANTS' denial response to his request for a replacement passport. ROBERT sues them as ROES 1 – 20 and will seek leave of court to insert their true names and identities as soon as they are ascertained through discovery.

**GENERAL ALLEGATIONS**

26.   Plaintiff incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth

11

1  in this paragraph.

2  27.    ROBERT is an indigent litigator who proceeds in pro se, and

3  forma pauperis. He is by birth a Philippine national. The death

4  of his mother in December 2020 now requires that he return to the

5  Philippines to settle her estate. His desire to travel is

6  currently being barred by the Republic of the Philippines based

7  on his self-confessed homelessness, a fact shared during his

8  email exchanges and in conversations with consular

9  representatives.

10 28.    PHILIPPINES, through sovereign right is the only source of

11 passports and legal documents for Philippine nationals who wish

12 to travel to and from the Republic of the Philippines.

13 29.    PHILIPPINES, through sovereign right is the source of ("Red

14 Ribbon") consulate notary services for legal documents executed

15 outside the Republic of the Philippines that renders the document

16 legally sufficient and effective within its borders.

17 30.    DEFENDANTS through negligence and wrongdoing caused to

18 cancel a previously scheduled appointment at the consulate office

19 in San Diego after ROBERT had already made travel arrangements,

20 causing him to pay a cancellation fee amounting to $14.67.

21 31.    DEFENDANTS deprived PLAINTIFF the issuance of a replacement

22 passport, using unacceptable excuses including the COVID-19

23 pandemic, the variance of "Roberto" and "Robert" that appear on

24 different documents and the supposed not-so legible birth

25 certificate that they claim renders his middle name "Lagdameo"

26 difficult to read. However, the unaltered birth certificate was

27 sourced from one of their government agencies, the Philippines

28 Statistics Authority, in the Republic of the Philippines.

32.   DEFENDANTS are purposefully denying ROBERT the right of his return travel because on several correspondences he revealed to them that he is homeless here in the USA. They are of the belief that he will become a ward of the state upon his return to the Philippines.

33.   PHILIPPINES, being the only source of the documents that ROBERT seeks, and having been duly denied of them, is being deprived his rights in the meaning of all applicable US laws, treaties and conventions that PHILIPPINES, the United States of America and all other nations to which this matter pertains to are signatories.

34.   At all times herein mentioned, DEFENDANTS and their agents had an obligation not to violate any laws of the United States of America, the State of California, and treatise to which it is a signatory to, and all regulations, statutes and laws that govern a sovereign state's dealings inside its host nation.

35.   At all times relevant to this action, ROBERT engaged DEFENDANTS through the internet whether through DEFENDANTS' web presence or by direct email, with respondents replying from their consulate offices in San Diego and Los Angeles.

36.   At all times relevant to this action, ROBERT engaged DEFENDANTS by personal appearance on September 7, 2021 at their consulate offices in Los Angeles California.

37.   ROBERT is informed and believes and based thereupon alleges that at all times herein mentioned each of the DEFENDANT(S) were agents, servants and/or employees or occupied other relationships with each of the other named DEFENDANT(S), and at all times herein mentioned acted within the course and scope of said agency

13

1   and/or employment and/or other relationship and each other.

2   DEFENDANT has ratified, consented to, and approved the acts of

3   their agents, employees, and representatives, and that each

4   actively participated in, aided and abetted, or assisted one

5   another in the commission of the wrongdoing alleged in this

6   Complaint.

7

8                         **CHRONOLOGY OF EVENTS**

9   38.   Plaintiff incorporates by reference the allegations in all

10  preceding paragraphs of this complaint as though fully set forth

11  in this paragraph.

12  39.   **DECEMBER 7, 2007** - ROBERT becomes homeless.

13  40.   **SOMETIME IN '08-'09** - ROBERT'S storage facility in Aliso

14  Viejo California is foreclosed upon. He loses every piece of

15  property stored inside it including his Philippine-issued

16  Passport and USA-issued Resident Alien Card (Green Card).

17  41.   **JUNE 18, 2020** - ROBERT'S 1990 GMC Suburban is burglarized.

18  The thief absconds with 3 bags, one of which contained his birth

19  certificate, high school records and other official documents

20  required to obtain a replacement passport. (EXHIBIT A)

21  42.   **DECEMBER 12, 2020** - ROBERT's mother dies. (EXHIBIT B)

22  43.   **JANUARY 22, 2021** - ROBERT learns from his cousin of

23  inheritances including certain properties in the Philippines from

24  his mother.

25

26      *(All emails are inserted herein as EXHIBIT C and referenced*

27  *and cross-referenced by the date and time of transmittal)*

28

44.   **FEBRUARY 27, 2021** – 1205PM – ROBERT sends email to San Diego Consulate Office with the heading INQUIRY RE: PASSPORT INQUIRY OR EMERGENCY TRAVEL DOCUMENT.

45.   **MARCH 1, 2021** – 1023AM – STAFF/SD responds, states they are able to provide emergency travel documents and notarial services, but not passports.

46.   **MARCH 1, 2021** – 1112AM – ROBERT requests an appointment with the Philippine Consulate in San Diego.

47.   **MARCH 2, 2021** – 1050AM – STAFF/SD responds: "The emergency travel document is allowed only for applicants who cannot be issued a Philippine passport and have emergency travel to the Philippines such as due to medical or legal reasons or death in the family. It can only be used one-way to the Philippines. For you to leave the Philippines, you will need to apply for a new passport."

48.   **MARCH 2, 2021** – 0218PM – LAPCG/LA – REFERRED BY CG/SD, SENDS ROBERT LIST OF DOCUMENTS AND ITEMS NEEDED FOR EMERGENCY TRAVEL DOCUMENT (ETD).

49.   **MARCH 3, 2021** – ROBERT enters into an agreement with his cousin to represent him for the potential sale of certain properties in the Philippines.

50.   **MARCH 3, 2021** – 1106AM – ROBERT sends email to HONCON/SD: "Attached is my mother's death certificate, signifying the reason for my return – that being to settle her estate in the Philippines."

51.   **APRIL 7, 2021** – 1120AM – ROBERT TO STAFF/SD – INQ: The Philippine Consulate requires emergency travelers to state his/her travel itinerary. Does that require show of an

15

1   actual airline ticket?

2   52.   **APRIL 7, 2021** – 0300PM – STAFF/SD – RES: Yes, it is

3   required for you to show the purchased airline tickets

4   (itinerary). And only foreign passport holders are not allowed in

5   the Philippines unless they can present a valid Visa.

6   53.   **APRIL 7, 2021** – 0412PM – ROBERT TO STAFF/SD – INQ: In

7   deference to your instructions this requires me to see the Los

8   Angeles Consulate, which I will do. However, for the purpose of

9   inquiry, what will the Hong Kong authorities do when you say they

10  can detain me?

11  54.   **APRIL 7, 2021** – 0548PM – STAFF/SD – RES: My apologies, but

12  I am not the right person to ask about being detained in other

13  countries. I am saying that since you opted to travel using

14  emergency travel, its use might be limited within the US

15  territory only. That is why we advise that you book connecting

16  flights within US only. And I understand that you are homeless, I

17  had already sought assistance and forwarded your previous email

18  to the Assistance to Filipino National section in Los Angeles so

19  they can assist you further.

20  55.   **MAY 23, 2021** – ROBERT receives his birth certificate

21  obtained by his cousin from the Philippine Statistics Authority

22  in Manila, Philippines.

23  56.   **MAY 28, 2021** – 0958PM – ROBERT TO LAPCG – INQ: I was able

24  to secure a ride on the 5th of June to present my documents, if a

25  spot is available. I would appreciate very much a quick

26  response.

27  57.   **JULY 16, 2021** – 0146PM – RNL TO STAFF/SD – INQ: WHAT

28  DOCUMENTS ARE NEEDED FOR NOTARIAL APPOINTMENT.

16

58.   **JULY 17, 2021** – 0140PM – STAFF/SD – RES: Thank you for your
inquiry. We understand that you need assistance with document
authentication. We have a temporary restriction and can book
appointments for San Diego County residents only.

59.   **JULY 17, 2021** – 0732PM – STAFF/SD – RES: ASKS RNL TO STATE
Address: Document type: Total number of documents for
authentication: Total number of signers:

60.   **JULY 17, 2021** – 0733PM – ROBERT TO STAFF/SD –  I live in
Orange County, equidistant between San Diego and Los Angeles. I
would prefer an appointment at your office, if at all possible. I
would like to arrange notarization and red ribbon for two sets of
documents. In addition, I would like to secure emergency travel
documents to the Philippines. Having said that, may I request an
appointment at your office?

61.   **JULY 19, 2021** – 0934AM – STAFF/SD – RES: Thank you for the
information. I had set you the earliest appointment available on
August 19 at 1:15 PM.

62.   **JULY 19, 2021** – 0945AM – STAFF/SD – MES: This email
confirms your appointment for document authentication at the
Philippine Consulate in San Diego on 19 August 2021, Thursday at
1:15 P.M. for 2 documents with 1 signer.

63.   **JULY 19, 2021** – 0946AM – STAFF/SD – MES: Thank you for
reaching out Philippine Consulate of San Diego. We can assist in
processing emergency travel documents. The emergency travel
document is for Filipino/Dual citizens who cannot be issued a
Philippine passport and have emergency travel to the Philippines
due to medical or legal reasons or death in the family. It can
only be used one-way to the Philippines.

17

64.   **AUGUST 13, 2021** – 0932AM – STAFF/SD – INQ: Please confirm that you have a valid ID to present on your appointment on August the 19th. Either a drivers license or a State ID will do.

65.   **AUGUST 13, 2021** – 1149AM – ROBERT TO STAFF/SD – RES:  Yes, I have a California ID card and a driver's license. Is there anything else you need?

66.   **AUGUST 13, 2021** – 1218PM – STAFF/SD – RES: Thank you for the confirmation, Sir. Regarding the emergency travel document, I am afraid we are unavailable to process this for you as it requires proof of citizenship like passport. And you had mentioned that your passport was stolen.

67.   **AUGUST 13, 2021** – 1226PM – ROBERT TO STAFF/SD – RES: No, the passport itself was not stolen. It was lost during an eviction of my storage facility. It was the other documentation that could provide me with a passport that got stolen (i.e. birth certificate, school records and other official documents).

68.   **AUGUST 13, 2021** – 0208PM – ROBERT TO STAFF/SD – RES: I was able to obtain my birth certificate only because it can now be acquired online. Here it is for you reference. Most of the other documents for a passport can only be obtained once I am home.

69.   **AUGUST 16, 2021** – ROBERT takes the bus to the Santa Ana Amtrak station to purchase train tickets from Santa Ana to San Diego. He pays $58.70.

70.   **AUGUST 16, 2021** – 1043AM – STAFF/SD – MES: We regret to inform that we have to cancelled your appointment here in San Diego, as we cannot process your request for emergency travel document. This matter has been forwarded to the Philippine Consulate General in Los angeles and someone from LA will reach

18

1   out to you.

2   71.   **AUGUST 16, 2021** – 1046AM – ADMIN/SD – MES: We are sorry to

3   hear about your situation. Unfortunately, the Philippine

4   Consulate of San Diego is an honorary consulate and does not have

5   the same jurisdiction as Los Angeles Consulate, we do not

6   have jurisdiction over passports, civil records and cannot

7   provide legal advice, your appointment at San Diego is cancelled,

8   however, your inquiry was relayed to Los Angeles Consulate and

9   their staff will reach out to you with further assistance.

10  72.   **AUGUST 16, 2021** – 0355PM – ROBERT TO STAFF/SD – MES: I will

11  still plan to travel to San Diego, unless you can explain to me

12  with adequate satisfaction why you cannot provide me with the Red

13  Ribbon request.

14  73.   **AUGUST 16, 2021** – 0415PM – ADMIN/SD – MES: Your appointment

15  at San Diego is cancelled as San Diego Consulate has

16  limited jurisdiction, however, your inquiry was relayed to Los

17  Angeles Consulate and their staff will reach out to you with

18  further assistance. Your inquiry will be fully handled by Los

19  Angeles Consulate and their Assistance to Nationals team. Our

20  apologies for any inconvenience, the staff from Los Angeles

21  Consulate will reach out to you shortly.

22  74.   **AUGUST 17, 2021** – ROBERT returns to the Amtrak Station in

23  Santa Ana and gets a refund. He is docked $14.67 as cancellation

24  fee.

25  75.   **AUGUST 30, 2021** – 0225PM – ROBERT TO STAFF/SD, ADMIN/SD,

26  ADMIN/PHILCON, ALSO FORWARDED TO LAPGC – INQ: RE: PROMISED

27  APPOINTMENT. (EXHIBIT D)

28        Please find the following documents served to

1   you herewith:

2       1. Correspondence - In re: Promised Appointment

3       2. Image of purchased tickets to/from SNA and SAN

4       3. Image of cancellation confirmation w/ charged fee

5       4. Copy of Robert Lacambra's Birth Certificate

6

7   76.   **AUGUST 31, 2021** - 0231PM - ROBERT TO LAPGC - INQ: RE:

8   PROMISED APPOINTMENT. (EXHIBIT D)

9       Please find the following documents served to

10  you herewith:

11      1. Correspondence - In re: Promised Appointment

12      2. Image of purchased tickets to/from SNA and SAN

13      3. Image of cancellation confirmation w/ charged fee

14      4. Copy of Robert Lacambra's Birth Certificate

15

16  77.   **SEPTEMBER 1, 2021** - 0439 - ROBERT TO STAFF/SD, ADMIN/SD,

17  ADMIN/PHILCON, ALSO FORWARDED TO LAPGC - 2ND REQUEST FOR IMMEDIATE

18  RESPONSE. (EXHIBIT E)

19      Please find the following documents served to you

20  herewith:

21      1. Correspondence - In re: Promised Appointment

22      2. Image of purchased tickets to/from SNA and SAN

23      3. Image of cancellation confirmation w/ charged fee

24      4. Copy of Robert Lacambra's Birth Certificate

25

26  78.   **SEPTEMBER 1, 2021** - 0445PM - ROBERT TO LAPGC - 2ND REQUEST

27  FOR IMMEDIATE RESPONSE. (EXHIBIT E)

28      Please find the following documents served to you

1    herewith:

2          1. Correspondence - In re: Promised Appointment

3          2. Image of purchased tickets to/from SNA and SAN

4          3. Image of cancellation confirmation w/ charged fee

5          4. Copy of Robert Lacambra's Birth Certificate

6

7    79.    **SEPTEMBER 2, 2021** - 0925AM - LAPCG - RES: Good day, This is

8    to acknowledge receipt of your email. Further, this is my first

9    time to know about your situation. If you are in need of a Travel

10   Document (TD), kindly mail the following requirements to:

11   80.    **SEPTEMBER 2, 2021** - 0944AM ATTACHMENT - LAPCG TO ALNEE -

12   MES: "Hazel, please find out from the Consulate whether

13   they actually forwarded the request of Mr. Lacambra to us. Based

14   on his email, he is in need of an apostille for his document/s

15   and an ETD. Let us properly advise our clients about the

16   procedures for document authentication as well as

17   on setting  appointments for consular documents with us and with

18   any HonCon office under our jurisdiction for us to avoid

19   complaints."

20   81.    **SEPTEMBER 2, 2021** - 1014AM - LAPCG TO STAFF/SD CC'D TO

21   ROBERT - INQ: "In one of your correspondence that his application

22   for ETD has been referred to the Philippine Consulate General in

23   Los Angeles. May I request the details of your referral, i.e.

24   date of referral and what section did you refer the application?"

25   82.    **SEPTEMBER 2, 2021** - 0249PM - ROBERT TO LAPCG - MES: The

26   correspondence and attached emails I sent you specifically

27   requested an appointment for "Red Ribbon" conformance of two

28   documents relating to a case on docket at the Regional Trial

21

1   Court in Quezon Province.

2   83.   **SEPTEMBER 2, 2021** - 0405PM - LAPGC - Your schedule for

3   Notarial Services will be on Tuesday, 07 Sep 2021 at 10 am. Just

4   go to the Consulate and give your name to our

5   receptionist.  Should the receptionist cannot find your name in

6   the list, you may look for me,Hazel Mendoza (ATN Officer)

7   84.   **SEPTEMBER 2, 2021** - 0410PM - ROBERT TO LAPGC - MES: "I must

8   to (sic) take the train from Orange. Could you please set an

9   appointment for early afternoon …"

10   85.   **SEPTEMBER 2, 2021** - 0412PM - ROBERT TO LAPGC - INQ: I must

11   to take the train from Orange County. Could you please set an

12   appointment for early afternoon to make sure I arrive there on

13   time?  I would very much appreciate it.

14   86.   **SEPTEMBER 2, 2021** - 0611PM - LAPGC - MES: Noted on this.

15   can you email me the copy of the document that needs to be

16   notarized so I can assess if we accept such document? thanks

17   87.   **SEPTEMBER 2, 2021** - 0639PM - ROBERT TO LAPGC - RES: "Here

18   are the two documents that need your Red Ribbon notarization.

19   They are to be filed in the Regional Trial Court, Quezon

20   Province. Awaiting your reply on an appointment around 1:30PM for

21   the 7th of September, if possible."

22   88.   **SEPTEMBER 2, 2021** - 0639PM - LAPGC - RES: Ok po. we

23   notarized thise documents po. (TRANSLATION: OK. We notarize these

24   documents.)

25   89.   **SEPTEMBER 2, 2021** - 0652PM - ROBERT TO LAPGC - INQ:

26   Salamat, po. Paki confirm kung pwede ilipat ang appointment

27   ko sa 1:30PM ng September 7. Ang appointment ko

28   ay kasalukuyang nakalagda ng

10:00AM. Kailangan ko pong sumakay ng train galing sa Orange

County at baka magipit at hindi makaabot. Paki

email nalang ninyo ako. Salamat sa inyong tulong.


    *ENGLISH TRANSLATION:*

    *Thank you. Please confirm that we can change the appointment*

    *to 1:30PM. My appointment is currently scheduled for*

    *10:00AM. I need to take the train from Orange County and may*

    *experience delays. Plese email me. Thanks for your help.*


90.    **SEPTEMEBR 2, 2021** – 0705PM – LAPGC – RES: yes, pwede po

basta dumating kayo ng before 3 pm. (TRANSLATION: Yes, we can. So

long as you get here before 3 PM)

91.    **SEPTEMEBR 2, 2021** – 0739PM – ROBERT TO LAPGC INQ:

    *Maraming salamat, po.*

    *Luluwas po ako ng maaga at tutuloy ako agad sa opisina ninyo*

    *Kung ano mang oras akong makarating, magpapakilala nalang ak*

    *o sa security guard.*

    *Matanong ko po sa inyo.*

    *Dahil kailangan ko pong makabalik sa Pilipina upang maayos k*

    *o ang estate ng aking namatay na ina.*

    *Iyong unang pasaporte ko ay nawala nang na-forclose ang*

    *storage locker ko. Tinignan ko*

    *ang listahan ng mga kailangan upang makakuha ng bagong (repl*

    *acement) pasaporte.*

    *Kamalasan naman, iyong mga tamang dokumento na pwedeng maipa*

    *kita sa inyo nanakaw sa isang burglary.*

    *Ito po ang parte ng police report nakasilid dito sa email.*

23

1      *Nakakuha na po ako ng birth*

2      *certificate dahil pwedeng makuha online.*

3      *Nakita po ninyo iyon sa nakalipas na email sa inyo.*

4      *Ngunit and baptismal ko at high school records ko*

5      *ay hindi ko makuha.*

6      *Sa kasalukuyan ay homeless ako at wala pang trabaho.*

7      *Sa madaling salita, wala po akong pondo para makakuha nung i*

8      *ba pang dokumento na nasa Pilipinas.*

9      *Kung maipakita ko po ang police report*

10     *at mapatunayan ko sa aking pananalita na ako'y Pilipino,*

11     *pwedo ho ba ninyo akong tulungang makabalik sa Pilipinas?*

12

13     *Ang inyong linkod,*

14     *ROBERT LACAMBRA*

15

16     (ENGLISH TRANSLATION)

17     *Thank you very much.*

18     *I will depart early and proceed to your office. Whatever*

19     *time I get there, I'll introduce myself to the security*

20     *guard. May I inquire? I need to return to the Philippines so*

21     *that I can settle the estate of my deceased mother. My first*

22     *passport was lost when my storage locker was foreclosed. I*

23     *looked at the list of requirements for a (replacement)*

24     *passport. Unfortunately, the documents that can be shown to*

25     *you were stolen in a burglary. Attached in the email is a*

26     *portion of the police report. I do have my birth certificate*

27     *because it can now be obtained online. You've seen that in*

28     *the past email to you. However, my baptismal and high school*

24

1     *record could not be obtained. Currently, I am homeless and*

2     *unemployed. In other words, I don't have the funds to get*

3     *any other documents in the Philippines. If I can show the*

4     *police report and prove through my speech that I am*

5     *Filipino, can you help me return to the Philippines?*

6     *Yours truly,*

7     *ROBERT LACAMBRA*

8

9     92.    **SEPTEMBER 3, 2021** - ADM/SD TO LAPGC - RES: RE: WHEN THIS

10    CASE WAS FORWARDED TO THE NATIONALS TEAM. Good

11    morning, HonCon forwarded the request to ConGen and was informed

12    that Mr. Lacambra's request will be handled by the Assistance to

13    Nationals team,

14    93.    **SEPTEMBER 7, 2021** - 0345PM - STAFF/SD TO ROBERT, CON/SD -

15    MES: Apologies for the delayed response. Please refer to the

16    attached email. ATTACHMENT: TO LAPGC, DYANPASTRANA,

17    PC/SD -  Hi Ms. Hazel, Good afternoon. Are you able

18    to assist this constituent who is unable to provide supporting

19    documents for his emergency travel request. I had attached his

20    mother's death certificate for your perusal. Or if you can direct

21    me to the right department please. My apologies for the added

22    work.

23    94.    **SEPTEMBER 07, 2021** - ROBERT travels by train to the

24    PHILIPPINE CONSULATE - LA to obtain consulate notarization for a

25    "Special Power of Attorney" (SPA) and "Extra-judicial Settlement"

26    (EJS) from the consulate, as well as a replacement passport.

27    95.    ROBERT receives two tickets from the receptionist - one for

28    the consulate notarial service and the other for an emergency

travel document ("TD") appointments. He was met at the entrance by Hazel Mendoza whom he had corresponded via email to obtain an appointment. ROBERT explains to Ms. Mendoza that because of the length of time it took for him to finally make an appearance at the consulate, he was able to collect all the documents required to obtain a replacement passport. Ms. Mendoza tells him that his appointment cannot be changed from a request for an "Emergency Travel Document" to "Replacement Passport." She cites COVID-19 procedures that the consulate instituted in response to the pandemic.

96.    ROBERT objects and renews his request for a replacement passport. His request was once again denied, and was told that they can only honor the original request. ROBERT bit his tongue expecting that he will get a chance to make a plea with the person who will attend to his actual request.

97.    ROBERT proceeds to his first appointment for the notary service. He pays the extra fee for expedited signatures for the "SPA" and the "EJS" (EXHIBIT I). He is told the documents will be ready before they go on lunch break.

98.    ROBERT proceeds to his next appointment for the travel document and begins at COUNTER #1 (PROCESSING) staffed by Michelle who refused to give her last name. ROBERT explains that he now has all documents to complete his application for a replacement passport. Repeating what Ms. Mendoza said, Michelle denies his request for a replacement passport.

99.    ROBERT insists and prevails upon her to inspect the documents that he brought with him. Following a checklist, he was sure that all the documents were there including a filled-out

26

1   application and a notarized "Affidavit of Lost Passport."

2   100.  Upon inspection of the documents, Michelle remarks that all

3   the documents needed were in fact there and presented. However,

4   the "Birth Certificate" provided was not legible that his middle

5   name, according to her, could not be made out by the naked eye.

6   She instructs ROBERT to obtain another copy of his Birth

7   Certificate in the form she called a "Local Civil Registrar's

8   Copy of Birth Certificate" (LCR). It had to be obtained in

9   Manila. However, she was clear that even if she overlooked

10   that detail she still could not process his request for a

11   replacement passport.

12   101.  ROBERT explains that he is homeless and does not have the

13   resources to be able to obtain a copy of the LCR. It is not just

14   a matter of calling someone he knows in the Philippines

15   to acquire one. A Special Power of Attorney specific to such a

16   transaction has to be executed and transmitted there and the

17   document transmitted via international mail. He simply does not

18   have the financial wherewithal to do so. The end result was,

19   ROBERT was told to arrange for another appointment because his

20   original request was for an emergency travel document.

21   102.  ROBERT left the counter and continued to wait for the

22   consulate notarized documents.

23   103.  A few minutes later Michelle goes on a break and is

24   replaced by another lady (ROE #1), whose name was not obtained.

25   ROBERT falls in line at COUNTER #1 (PROCESSING) to renew his

26   request. The lady inspects the documents and noticed a variance

27   on ROBERT'S first name. Only earlier it was not an issue for

28   Michelle. His California Identification Card bore the name Robert

27

Nelson L. Lacambra. However, the birth certificate bore the name
Roberto Nelson Lagdameo Lacambra. Once again she takes notice of
ROBERT'S mother's middle name, "Lagdameo" stating that it was not
clear. She tells ROBERT to obtain a "Local Civil Registrar's Copy
of Birth Certificate" (LCR). His request for a replacement
passport is denied.

104.  The lady at the counter essentially said the same thing,
suggesting that it was not only one person making a staff
decision, but a consulate-wide procedure. Even if ROBERT had all
his documents in order, they still required that he return for
another appointment. This is despite the fact
that both representatives agreed that all the documents for a
replacement passport were presented.

105.  However, to give the appearance of legitimacy for the
denial, the middle name (Lagdameo) could not be read and
the variances of his first name (Roberto & Robert) became
insurmountable impediments. All that needed to be done was to
review their database because ROBERT'S information was already
entered at the time his first passport was issued.

106.  At around noon, ROBERT is called at COUNTER #14 where he
received his notarized document allowing him to make the return
trip.

107.  On the way back to Orange by train, ROBERT cannot stop
thinking that the consulate was merely looking for excuses not to
give him a replacement passport. In his experience, a person who
wishes to travel to another country must prove that he/she has
enough resources so as not to be a warden of the state at the
country of destination. Countries often require an affidavit and

1  proof of assets.

2  108.  His experiences with the DEFENDANTS, with the cancelled

3  appointment and unseemly excuses not to reissue a passport is

4  proof they do not want him to return, because here in the USA he

5  is homeless.

6

7                    **DISCUSSION AND ANALYSIS OF ISSUES**

8  109.  Plaintiff incorporates by reference the allegations in all

9  preceding paragraphs of this complaint as though fully set forth

10  in this paragraph.

11

12      **PHILIPPINES BLOCK ROBERT'S RETURN BECAUSE HE IS HOMELESS**

13  110.  All Philippine consulate offices around the globe are

14  important components of the Philippine Department of Foreign

15  Affairs whose main responsibility include contributing to the

16  enhancement of national security and the protection of

17  territorial integrity and national sovereignty of the

18  Philippines. This necessitates preventing entry of travelers who

19  may become a liability to the state.

20  111.  It is a matter of policy for countries to ascertain a

21  traveler's ability to finance their stay in a country so as not

22  to be a financial liability to the host country. It is a sound

23  policy if to prevent potential problems that could devolve into

24  civil or criminal liability. Mitigating such situations also

25  avoid unintended complications in diplomatic relations.

26  112.  The Republic of the Philippines requires a host/sponsor of

27  a traveler visiting the Philippines to sign an "Affidavit of

28  Support", which states in relevant parts: (EXHIBIT F)

29

1    *"That I will take full responsibility for all his/ her*

2    *expenses, subsistence and accommodation throughout the*

3    *duration of his/her stay and ensure that he/she will not*

4    *become a public charge while on travel;"*

5

6    113.   In his interaction with members of the consulate staff,

7    ROBERT revealed that he is homeless in this country (EXHIBIT C -

8    ##'s 03, 06, 09, 11, 12, 14, 15, 22, 49). ROBERT was even

9    informed that because of his homelessness, his case is being

10   referred to the Nationals Team (EXHIBIT C – #10). However, the

11   death of his mother now requires him to travel to the Philippines

12   to settle her estate, a fact known to them on his very first

13   email to them (EXHIBIT C - #01, #06 & #52). He was being candid

14   about his homelessness, unwittingly painting himself as a

15   potential liability to the government upon his arrival there,

16   unfair though as it may seem.

17   114.   ROBERT is informed and believes that consulate staff

18   members are trained to detect such conditions and are instructed

19   to prevent and or otherwise mitigate the occurrence of such

20   diplomatically undesirable situations. Having informed the staff

21   that ROBERT is homeless here in the USA, he was identified as

22   someone unsuited for entry into the Philippines.

23   115.   Preventing the entry of a traveler/visitor who may become a

24   ward of the state is a policy that is wrongfully being applied to

25   ROBERT, insofar as he is a Filipino national and not a mere

26   visitor or tourist. The consulate staff in Los Angeles and San

27   Diego were made aware of this fact through his emails and through

28   the presentment of his birth certificate. He was, in fact,

1   seeking the re-issuance of a replacement Philippine passport,

2   which is presumptive of his Philippine citizenship.

3

4                **CANCELLED APPOINTMENT AND FURTHER DELAYS**

5   116.  The first signs of a concerted effort to exclude him from

6   entry to the Philippines was the unilateral cancellation of an

7   appointment at the San Diego consulate office for August 19,

8   2021. In fact, ROBERT detected something amiss when his

9   appointment was scheduled exactly one month upon his request. He

10  requested the appointment on July 19, 2021. The appointment was

11  scheduled for August 19, 2021, 30 days away. ROBERT rationalized

12  that it may have been mere coincidence, but the thought that he

13  was being delayed surreptitiously left a nagging imprint that was

14  only later vindicated.

15  117.  The appointment for August 19, 2021 in San Diego was for

16  consulate notarial services for two documents that were to be

17  filed at the Regional Trial Court in Quezon Province,

18  Philippines. Philippine court procedures require that all

19  documents executed outside the country be conformed to the rules.

20  One such procedure that renders a document legally sufficient is

21  through consulate notarial called "Red Ribbon." The other reason

22  for the appointment was to obtain an "Emergency Travel Document,"

23  a one-way permission for travel to the Philippines issued to

24  Filipinos who could not obtain a passport. Alternatively, ROBERT

25  hoped to obtain a replacement passport after he received a

26  certified copy of his birth certificate from the Philippines in

27  May of 2021.

28  118.  On the morning of August 16, 2021 ROBERT traveled to

                                    31

1  the AmTrak Station in Santa Ana, California by bus to obtain a

2  two-way ticket to San Diego where the consulate office was

3  located (EXHIBIT G). He did so because he had planned to take the

4  earliest train on the 19th.  To get there to the train station on

5  the morning of the 19th, he had to take a bus from Orange early

6  in the morning before 6AM. It would have been the first train

7  trip he has ever taken to San Diego and he was not familiar with

8  the travel procedures and the length of time it takes for pre-

9  boarding. He wanted to have the ticket beforehand so he would not

10 have to purchase it that morning and be delayed further.

11 119.  Upon his return in the afternoon, an email from Ria Esteban

12 from consulate office in San Diego was received ROBERT (EXHIBIT C

13 – Email #24). It read:

14      *"We regret to inform that we have to cancelled your*

15      *appointment here in San Diego, as we cannot process your*

16      *request for emergency travel document. This matter has*

17      *been forwarded to the Philippine Consulate General in*

18      *Los angeles and someone from LA will reach out to you.*

19      *We apologize for the inconvenience this has caused."*

20

21 120.  ROBERT immediately replied (EXHIBIT C – Email #26):

22      *"I requested an appointment with the consulate for two*

23      *reasons. First, to get Red Ribbon for two separate*

24      *documents. Second, to obtain emergency travel documents. I*

25      *am aware of the problems with securing the travel documents.*

26      *However, there is no reason to cancel the appointment for my*

27      *request for red ribbon conformance. I have*

28      *already purchased the train ticket for my appointment.*

32

1      *I will still plan to travel to San Diego, unless you can*

2      *explain to me with adequate satisfaction why you cannot*

3      *provide me with the Red Ribbon request."*

4

5 121.  It was replied to by Kateryna Borge from

6 the consulate office in San Diego (EXHIBIT C – Email#28). It read

7 in relevant parts:

8      *"Good afternoon Mr. Lacambra,*

9      *Your appointment at San Diego is cancelled as San Diego*

10      *Consulate has limited jurisdiction, however, your inquiry*

11      *was relayed to Los Angeles Consulate and their staff will*

12      *reach out to you with further assistance. Your inquiry will*

13      *be fully handled by Los Angeles Consulate and their*

14      *Assistance to Nationals team. Our apologies for any*

15      *inconvenience, the staff from Los Angeles Consulate will*

16      *reach out to you shortly."*

17

18 122.  The next day, ROBERT returned to the AmTrak station and

19 requested a refund, He was docked $14.67 for cancellation fee.

20 (EXHIBIT H)

21 123.  In a sign that ROBERT was being further delayed, no

22 communication from the consulate office in Los Angeles was

23 received on the matter prompting him to write a sternly worded

24 letter 13 days later.

25 124.  On August 30, 2021, ROBERT emailed a letter bearing the

26 heading "IN RE: PROMISED APPOINTMENT" (EXHBIT D) to both the San

27 Diego and Los Angeles consulate offices demanding an

28 appointment immediately. It was met with no reply.

125.  On September 1, 2021, the same letter was resent bearing the heading "2ND REQUEST FOR IMMEDIATE RESPONSE." (EXHIBIT E)

126.  On September 2, 2021 at 924AM an email from the consulate office in Los Angeles was received by ROBERT (EXHIBIT C – Email #33). It read, in relevant parts:

> "*Good day,*
>
> *This is to acknowledge receipt of your email.*
>
> *Further, this is my first time to know about your situation.*"

127.  This essentially confirmed that the Los Angeles consulate was not made aware of ROBERT'S situation despite assurances from the San Diego consulate, inferring the existence of disruptive activities by as yet unknown individuals/group. But after more exchange of emails, an appointment was finally granted.

128.  On September 2, 2021 at 405PM, an email from the consulate office in Los Angeles was received by ROBERT. It read, in relevant parts:

> "*Your schedule for Notarial Services will be on Tuesday, 07 Sep 2021 at 10 am.*
>
> *Just go to the Consulate and give your name to our receptionist. Should the receptionist cannot find your name in the list, you may look for me,Hazel Mendoza (ATN Officer).*"

**THE COVID–19 PANDEMIC EXCUSE TO DENY APPLICATION**

129.  On September 7, 2021, ROBERT arrived at the 5th Floor of 3435 Wilshire Blvd where the Philippine consulate office in

1   Los Angeles is located. He presented the appointment email to the

2   security guard who excused himself with the document. He went to

3   the back to confer with the back-office staff.

4   130.  A few minutes later, a lady who introduced herself as Hazel

5   Mendoza appeared at the front desk. Before asking for his ticket,

6   ROBERT requested that he be sent to the consular officer who

7   can assist him with obtaining a replacement passport instead of

8   an emergency travel document. Ms. Mendoza denied his

9   request stating that his original request was for an emergency

10   travel document. She essentially said that if ROBERT needed to

11   obtain a replacement passport he needed to reschedule and return

12   on another day. ROBERT persisted and explained that he has all

13   the documents required for a replacement passport with him,

14   making an emergency travel document application unnecessary.

15   131.  In short, ROBERT was told that the reason why his request

16   for a passport replacement could not be made was because of

17   COVID-19. His previous appointment for an "Emergency Travel

18   Document" could not be changed. ROBERT persisted yet again

19   explaining that he has all the documents needed. Ms. Mendoza gave

20   ROBERT a stern look, reiterating that they can only accommodate

21   his request for consulate notarial and an emergency travel

22   document. The receptionist was instructed to provide ROBERT with

23   two appointments in the form of tickets to be called at different

24   windows. ROBERT was told to wait for his numbers, which will be

25   flashed on the big screens inside the waiting area.

26   132.  The first appointment to be called was the appointment for

27   the consulate notarial which went without any complications.

28   ROBERT paid an additional $10 per document for expedited service

35

1   (EXHIBIT I), and was promised receipt of the documents (Special

2   Power of Attorney and Extra-judicial Settlement) before their

3   lunch break.

4   133.  The second appointment was called almost immediately, with

5   the screen monitor asking ROBERT to proceed to COUNTER # 1. The

6   sign said "PROCESSING." ROBERT was attended to by Michelle who

7   would not give her last name. ROBERT presented his ticket,

8   and asked for a replacement passport. He presented all the

9   documents he prepared including:

10     1. Confirmed appointment (EXHIBIT C)

11     2. Passport application form (EXHIBIT K)

12     3. Notarized affidavit of loss  (EXHIBIT Q)

13     4. Police report of lost documents (EXHIBIT A)

14     5. Birth certificate from the PSA (EXHIBIT L)

15     6. California Identification Card (EXHIBIT O)

16     7. California Driver's License (EXHIBIT O)

17     8. Social Security Card (EXHIBIT N)

18     9. Mother's death certificate (EXHIBIT B)

19

20   134.  Michelle pointed to the ticket that had "TD," which

21   signified that the appointment was for an emergency travel

22   document (EXHIBIT J). She said that she could accommodate his

23   request for a replacement passport because the appointment was

24   for an "Emergency Travel Document" (TD).

25   135.  ROBERT explained that since the day the appointment was

26   scheduled, he was able to gather all the documents required for a

27   replacement passport. She replied that she cannot process a

28   request for a passport replacement because the appointment was

36

1  for emergency travel documents. Without trying to offend her

2  person and authority, ROBERT asked her to review all his

3  documents to determine whether he has all the documents needed to

4  obtain a replacement passport.

5  136.  After inspecting the documents, Michelle concluded that all

6  the documents needed were presented to her. She made a note at

7  the bottom of the Passport Application stating what was needed

8  when ROBERT returns (EXHIBIT K). Noteworthy is the fact that

9  ROBERT presented those items to her.

10  137.  With that determination, they were still at loggerheads

11  with the question as to why they could not process the request

12  for a replacement passport. In an instant an excuse conveniently

13  developed in the form of what she said was my difficult to read

14  middle name. Pointing to my middle name (Lagdameo) on the birth

15  certificate (EXHIBIT L), she said that another copy of his birth

16  certificate called the "Local Civil Registrar's Copy of Birth

17  Certificate" (LCR) had to be obtained from Manila. The

18  appointment essentially ended.

19  138.  ROBERT had brought his mother's death (EXHIBIT B)

20  certificate to prove the circumstances of his travel. On it the

21  Lagdameo was more legible because the certificate was only

22  recently published, unlike his birth certificate. She refused to

23  inspect it and sent ROBERT away.

24  139.  Lunch time was still a ways off, which gave ROBERT a moment

25  to reflect on the appointment and the reason it failed. Both Ms.

26  Mendoza and Michelle said that the reason his return

27  was required was because of COVID-19 procedures that were

28  recently put in place. However, looking around, it seemed like

37

1    nothing more than an excuse for mediocrity and to lessen their

2    workload. About an hour before lunch time, the waiting area was

3    packed full of people. In fact, it was standing room only in

4    certain sections of the room. Visitors were sitting next to each

5    other in chairs, and people were standing in lines with less than

6    a pace between them. There were no attempts to enforce the now-

7    expected 6 feet of separation.

8    140.   ROBERT noticed that Michelle was replaced by another lady

9    at COUNTER #1 (PROCESSING). ROBERT fell back in line determined,

10   to get a replacement passport request processed. The lady behind

11   the counter essentially echoed what Ms. Mendoza and Michelle had

12   already told him. The appointment could not be changed from a

13   request for emergency travel document to a request for a

14   replacement passport. While reviewing the documents, she noticed

15   something that Michelle had not. ROBERT'S name on his birth

16   certificate is "Roberto" and my California Identification Card

17   states "Robert." She asked me to obtain a copy of another birth

18   certificate referred to as the "Local Civil Registrar's Copy of

19   Birth Certificate" (LCR). Handing me all my documents, she called

20   the next person in line. She then commanded me to move all my

21   belongings to the ledge at the next window. The appointment

22   ended.

23   141.   Dejected and feeling that he was being treated unfairly,

24   ROBERT returns to the seat closest to COUNTER #14. Passing by the

25   window, he tells the lady who processed his notarial request that

26   he will wait in that chair closest to her window, pointing at it,

27   within easy view of her in case the notarized documents are

28   issued before their lunch break.

142.  ROBERT sits down and doubles his mask protection, wearing his mask and wearing a bandana over it. The packed room had taken the aura of a super spreader event, but instead of jovial people contented by the euphoria of a concert or a professional sport contest, it had mostly aggravated people. Many were standing too close to each other, or sitting too close to each other, or walking too close to each other.

143.  ROBERT sought an appointment in San Diego (EXHIBIT C – Email #1) calculating that less people can be expected at that consulate, a necessary precaution during a pandemic despite the added cost. The train ride to San Diego costs about $60 two-way. The train trip to Los Angeles was only about $22 round trip including the bus fare. But, considering the pandemic it seemed sensible. He also wanted to finish his consulate business that afternoon to avoid another DMV-like visit at the consulate in the future. Sitting there surrounded by a multitude of people, it gave the impression that the COVID-19 protections that the staff had been using to deny ROBERT a replacement passport were merely excuses to deprive him of his right to travel freely.

144.  The excuse of COVID-19, though seemingly considerate, fails on its face as the consulate office in Los Angeles failed to enforce other guidelines such as 6 feet distancing. The waiting room seating forced visitors to sit close to each other. People in line at various windows experienced the same.

145.  At 8:54AM, ROBERT snapped a picture (EXHIBIT M). It was the moment he arrived at the reception desk. He was one hour early for his appointment. It showed the early crowd, who occupied seats without regard to social distancing guidelines. By

1   the time he left, a few minutes before the noon hour, the

2   consulate office was packed with a standing-room-only crowd.

3   He failed to snap a picture before leaving, but discoveries

4   requesting CCTV videos of the premises that morning will bear

5   this out. More importantly, the consulate staff were not

6   enforcing any of social distancing guidelines.

7   146.  Using COVID-19, a pretended difficult to read middle name

8   on a document and variance of Roberto and Robert as a reasons not

9   to process his request for replacement passport could not be

10  viewed as nothing less than a deprivation. The attendants already

11  admitted that ROBERT had all the documents required for a

12  replacement passport. Asking him to return for another

13  appointment to a potentially crowded and standing-room-only

14  consulate, defeats their claims of health precautions.

15

16              **ALTERNATIVE DOCUMENTS PRESENTED WERE ADEQUATE**

17  147.  The two separate encounters at COUNTER #1 revealed two

18  reasons for the pretended denial of ROBERT'S request for

19  replacement passport. They are:

20    1. The difficult to read middle name (Lagdameo) of ROBERT

21    2. The variance of first names on his birth certificate

22       (Roberto) and identification card (Robert).

23     When ROBERT arrived in the USA in the '80's the lawyer who

24  prepared all his documents prevailed upon him to Americanize his

25  name. According to him, in America, the middle name is the next

26  name given to the person. His birth name is Roberto Nelson

27  Lagdameo Lacambra. The very first official document ever issued

28  to him by the US government was his Social Security Card. On

                                  40

1    the advise of his lawyer, the document bears the name Robert N.

2    Lacambra. (EXHIBIT N)

3    148.  When his identification card and driver's license were

4    issued, both bore the names Robert Nelson L. Lacambra. All

5    entries were influenced by the DMV representatives who processed

6    his application and who entered his name in their respective

7    databases. They based it on the birth certificate he

8    presented. For the court's illumination are ROBERT'S California

9    Identification Card and Driver's License (EXHIBIT O).

10   149.  At both times while at COUNTER #1, ROBERT presented his

11   identification card, driver's license and social security card.

12   During his interview with Michelle, he also produced a copy of

13   his mother's death certificate (EXHIBIT B). This is significant

14   because his mother's maiden name is Linda Kirkwood Lagdameo. In

15   the Filipino culture, the newborn is given the maiden name as

16   middle name (EXHIBIT L), something the representatives would have

17   been cognizant to. It was a cultural tradition that they

18   conveniently forgot or ignored if to provide an excuse to deny

19   ROBERT a replacement passport.

20   150.  Moreover, just a few minutes earlier the

21   consular notary noticed a variance in the names that appeared on

22   ROBERT'S documents and his identification card. She merely asked

23   him to enter his name both ways designating the latter as his AKA

24   (Also Known As), signified in the "Special Power of Attorney"

25   (EXHIBIT P).

26   151.  For the purpose of this complaint, ROBERT seeks a

27   replacement of a lost passport. In other words, the Philippine

28   government already has a record of him. The information on their

41

1    database will show the staff how his middle name is spelled.

2    152.  For the purpose of this pleading, ROBERT cannot change all

3    the documents to show one or another. They were all issued

4    several years ago and with the guidance of the attending

5    officials processing his documents. They can only be explained in

6    the way the consular notary had offered on the documents that

7    they processed that morning. ROBERT is willing to sign the

8    documents, stating his AKA if the consulate and this court

9    should require.

10

11   **UNREASONABLENESS OF EMERGENCY TRAVEL DOCUMENT REQUIREMENTS**

12   153.  Anyone seeking an emergency travel document must also

13   present an itinerary, the actual airline travel ticket, before

14   the application is granted (EXHIBIT C – Email ##'s 7 & 8).

15   However, the travel document is only valid for 30 days. In other

16   words, a significant expenditure for the air travel must first be

17   made without even knowing whether all the documents are in order

18   and that the application will be approved. This alone gave ROBERT

19   good cause to opt for a replacement passport, instead.

20   154.  As the consulate office in San Diego demonstrated, their

21   appointments are made 30 days out. In the event a person needs to

22   return because of missing documentation or any other reason, a

23   change of travel date may have to be made requiring the payment

24   of cancellation fee. As clearly shown, DEFENDANTS have no regard

25   for the financial duress that such a policy may cause, having

26   ROBERT incur a cancellation fee on his train reservations. Those

27   who seek emergency travel documents do so generally under

28   tremendous emotional and financial duress, which

1   their assistance should seek to allay. Instead, they add to the

2   individual's troubles and burdens.

3   155.   Moreover, another of the requirements of an emergency

4   travel document is the need to purchase a one-way ticket. In

5   effect, it also has to be non-stop once it leaves the USA to

6   avoid detention at a foreign port. Depending on where the

7   document was issued, the flight will have to originate from that

8   city, in this case either San Diego or Los Angeles. A non-stop

9   ticket usually carries a premium in pricing, making it

10  unaffordable to ROBERT, a jobless homeless individual who simply

11  wants to return to the land of his birth.

12  156.   Nevertheless, the limitations imposed by such policies make

13  it necessary for ROBERT to apply for a replacement passport,

14  instead. With such a passport he will have certain flexibility to

15  be able to make affordable travel arrangements and comply

16  with restrictions imposed by the COVID-19 pandemic abroad.

17  157.   Moreover, just for the transaction of obtaining travel

18  documents, ROBERT had to obtain a mail box because of the newly

19  instituted policy that states documents and passports can only be

20  received through the mail (EXHIBIT C - Email #05). Attached is a

21  receipt for the second six-month lease term (EXHIBIT R).

22  158.   DEFENDANTS would not accommodate ROBERT by allowing him to

23  pick-up the documents. This is in view of the fact that he was

24  able to wait for the notarized documents while he was there on

25  September 7, 2021. Had DEFENDANTS exercised reasonable alacrity

26  and care, ROBERT would not need to incur expenses that are wholly

27  oppressive considering his indigence.

28

1          **CONSULAR FACILITIES REGARDED AS SOVEREIGN**

2    159.  28 USC § 1330 have exacting pleading requirements,

3    including proving that DEFENDANT PHILIPPINES is a foreign

4    state.  28 U.S. Code § 1603 provides the definition of a foreign

5    state, stating in relevant parts:

6          *For purposes of this chapter—*

7          *(a) A "foreign state", except as used in section 1608*

8    *of this title, includes a political subdivision of a foreign*

9    *state or an agency or instrumentality of a foreign state as*

10   *defined in subsection (b).*

11         *(b) An "agency or instrumentality of a foreign*

12   *state" means any entity—*

13         *(1) which is a separate legal person, corporate or*

14   *otherwise, and*

15         *(2) which is an organ of a foreign state or political*

16   *subdivision thereof, or a majority of whose shares or other*

17   *ownership interest is owned by a foreign state or political*

18   *subdivision thereof, …"*

19

20   160.  Moreover, The Vienna Convention of 1963 articulates the

21   unique arrangement of consular premises in its receiving states.

22   It has been interpreted as meaning that consular premises are

23   foreign territories as if it was an extension of the state that

24   flies the flag. Article 31 of the Vienna Convention of 1963

25   states in relevant parts:

26         *"ARTICLE 31 - Inviolability of the consular premises*

27         *Consular premises shall be inviolable to the extent*

28   *provided in this article.*

1      *The authorities of the receiving State shall not enter*
2      *that part of the consular premises which is used exclusively*
3      *for the purpose of the work of the consular post except with*
4      *the consent of the head of the consular post or of his*
5      *designee or of the head of the diplomatic mission of the*
6      *sending State. The consent of the head of the consular post*
7      *may, however, be assumed in case of fire or other disaster*
8      *requiring prompt protective action.*

9      *Subject to the provisions of paragraph 2 of this*
10     *article, the receiving State is under a special duty to take*
11     *all appropriate steps to protect the consular premises*
12     *against any intrusion or damage and to prevent any*
13     *disturbance of the peace of the consular post or impairment*
14     *of its dignity.*

15     *The consular premises, their furnishings, the property*
16     *of the consular post and its means of transport shall be*
17     *immune from any form of requisition for purposes of*
18     *national defence or public utility. If expropriation is*
19     *necessary for such purposes, all possible steps shall be*
20     *taken to avoid impeding the performance of consular*
21     *functions, and prompt, adequate and effective compensation*
22     *shall be paid to the sending State."*

23     161.  It is doubtful that DEFENDANT PHILIPPINES will deny that it
24     is a sovereign nation. Nevertheless, the aforementioned
25     definitions are herewith inserted for the court's review.

26

27     **COMMERCIAL ACTIVITY AN EXCEPTION TO CONSULAR IMMUNITIES**

28     162.  28 USC § 1330 (Actions against foreign states) provides in

45

1   relevant parts:

2      *(a) The district courts shall have*

3   *original jurisdiction without regard to amount in*

4   *controversy of any nonjury civil action against a foreign*

5   *state as defined in section 1603(a) of this title as to any*

6   *claim for relief in personam with respect to which the*

7   *foreign state is not entitled to immunity either under*

8   *sections 1605–1607 of this title or under any applicable*

9   *international agreement.*

10      *28 USC § 1603 (Definitions) provides in relevant*

11   *parts:*

12      *(d) A "commercial activity" means either a regular*

13   *course of commercial conduct or a particular commercial*

14   *transaction or act. The commercial character of an activity*

15   *shall be determined by reference to the nature of the course*

16   *of conduct or particular transaction or act, rather than by*

17   *reference to its purpose.*

18      *(e) A "commercial activity carried on in the United*

19   *States by a foreign state" means commercial activity carried*

20   *on by such state and having substantial contact with*

21   *the United States.*

22

23   163.  The cancelled appointment on August 19, 2021 for the

24   meeting at the consulate office in San Diego was scheduled

25   expressly for consulate notarial services and emergency travel

26   documents. The appointment on September 7, 2021 was for the same

27   with the hope of obtaining a replacement passport, after ROBERT

28   was able to obtain his birth certificate from Manila.

164.   On August 19, 2021 the consulate office of San Diego
unilaterally cancelled the appointment with ROBERT, causing him
to pay for cancellation fees in the amount of $14.67 (EXHIBIT H).
The cancellation was unfair insofar as ROBERT had sought services
that were part of their service offerings.

165.   Furthermore, ROBERT'S appointment at the consular office in
Los Angeles yielded notarized documents (EXHIBIT I), services
that are commercial in nature, and falling under the ambit of
this court's jurisdiction.

166.   The transaction for the emergency travel document and the
replacement passport have yet to be concluded. However, for the
purpose of this action ROBERT asserts his rights on the basis
that all appointments concluded were for commercial transactions
in the meaning of 28 USC § 1330, irrespective of whether he was
able to obtain a replacement passport or not.

**CONSUL OFFICIALS' DUTY TO AID FILIPINOS IN DISTRESS**

167.   According to the Philippine Department of Foreign Affairs,
consulate staff members are instructed to assist distressed
Filipinos around the world. ROBERT, in no uncertain terms,
informed the staff that he is homeless and pleaded for
assistance. Culled from their website is the following verbiage,
articulating a policy statement that needs to be heeded
(https://www.philippineconsulatela.org/other-services/assistance-
to-distressed-filipinos)

   *Assistance to Distressed Filipinos*

   *Under the declared government policy of promoting and*
   *protecting the rights and well-being of all overseas*

47

1    *Filipinos, it is the Consulate's responsibility to protect*
2    *the right and interests of all distressed Filipinos under*
3    *its jurisdiction (ex. detained or arrested) within the*
4    *parameters allowed by the United States Government in the*
5    *intervention of its official proceedings.*

6    *The Assistance to Nationals (ATN) section of the*
7    *Philippine Consulate General attends to cases involving*
8    *Filipinos in distress. Actions taken by the ATN Section*
9    *include, but are not limited to:*

10   *1. Assistance in facilitating repatriation to the*
11   *Philippines*
12   *2. Assistance in human trafficking cases*
13   *3. Monitoring of cases in court*
14   *4. Assistance in the Shipment of Remains*
15   *5. Assistance in criminal cases*
16   *6. Assistance in locating whereabouts of missing*
17   *Filipino nationals*
18   *7. Prison visitation*
19   *8. Provision of legal advice*
20   *9. Mediation/ conciliation*

21   *The ATN Section is also in charge of taking note of*
22   *consular notifications sent by U.S. authorities involving*
23   *detained or arrested Filipino nationals. The Consulate calls*
24   *the police or detention facility to check on the Filipino*
25   *national and determine the case involved.*

26   *The ATN Section also coordinates with non-government*
27   *organizations and government agencies involving laws and*
28   *policies affecting labor, human trafficking, anti-*

48

1     *discrimination, among others.*

2          *The ATN Section is available from Mondays to Fridays,*

3     *9:00am to 6:00pm through telephone number 213-637-3024. For*

4     *urgent concerns, Filipinos in distress may call the mobile*

5     *ATN number at 1-213-587-0758 or hotline number 1-213-268-*

6     *9990. You can also send an email to lapcg.atn@gmail.com*

7

8     168.   The policy position clearly states a duty of care towards

9     Filipinos experiencing distress around the world. They are by

10    definition a call for vigilance and an attitude of readiness to

11    extend aid to Filipinos abroad who cannot for themselves. Failing

12    to heed such policies are tantamount to abandoning their posts

13    and an outright act of negligence.

14    169.   This is significant because, according to an email from the

15    staff in San Diego, ROBERT'S emails were forwarded to the

16    Nationals Team as early as April 7, 2021 (EXHIBIT C - Email #10).

17    The emails would have informed them of ROBERT'S homelessness as

18    it was mentioned numerous times on emails (EXHIBIT C - Email ##'s

19    #03, 06, 09, 11, 12, 14, 15, 22, 49). Moreover, he was also

20    grieving for his mother's death - the reason his travel to the

21    Philippines is required. It was treated on several emails,

22    including the transmittal of his mother's death certificate

23    (EXHIBIT C - Email ##'s 01, 06, 52). ROBERT even complained on an

24    email that he is stuck in the USA (EXHIBIT C - Email #22).

25    170.   In light of the clear indication of someone in distress,

26    can anyone make the argument that DEFENDANTS were comporting

27    themselves in a manner consistent with their duties?

28

1              **MALICIOUS, OPPRESSIVE AND FRAUDULENT CONDUCT**

2 171. All told, ROBERT'S failure to return home has been caused

3 by pretended and unseemly excuses that were malicious, oppressive

4 and fraudulent conduct.

5 172. First, DEFENDANT CONGE/SD scheduled an appointment that

6 they did not intend to keep, canceling it at the last minute

7 after ROBERT had already made arrangements to travel by train.

8 They did so without good cause as the services he sought were

9 available at the San Diego consulate office.

10 173. Second, DEFENDANTS fraudulently claimed that the documents

11 ROBERT presented were not suitable or complete, requiring him the

12 added burden of obtaining a document in the Philippines that will

13 tend to only repeat what was on the birth certificate, which he

14 had already presented.

15 174. Third, they used the excuse of COVID-19 not to provide

16 ROBERT a replacement passport despite having all documents.

17 However, at all times that ROBERT was inside the consulate office

18 in Los Angeles, COVID-19 social distancing guidelines were

19 neither followed nor enforced.

20 175. Fourth, they fraudulently represented that the spelling of

21 his middle name was not known to them or could not be ascertained

22 through their database having issued ROBERT a passport before.

23 176. Fifth, they fraudulently claimed that ROBERT'S name was not

24 known to them, having issued him a passport before. They used the

25 variance between "Roberto" that was on his birth certificate and

26 "Robert" that was on his California driver's license as an excuse

27 to deny his request for a replacement passport. Only earlier the

28 consulate notary simply had him enter AKA beside one of the names

to execute a court-ready document (EXHIBIT P).

177.   In view of the fact they are the only source for travel document available to ROBERT, and having knowledge of his homelessness and the purpose of his trip (to settle his deceased mom's estate), they were in dereliction of their duty of care. Their actions were malicious, oppressive and fraudulent.

## EXTREME AND OUTRAGEOUS CONDUCT

178.   The California Supreme Court codified when extreme and outrageous conduct exists, holding:

> "*A cause of action for intentional infliction of emotional distress exists when there is "`"`(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"'" (Potter v. Firestone Tire & Rubber Co. (1993) 6 Cal.4th 965, 1001 [25 Cal.Rptr.2d 550, 863 P.2d 795]; see Christensen v. Superior Court (1991) 54 Cal.3d 868, 903 [2 Cal.Rptr.2d 79, 820 P.2d 181].) A defendant's conduct is "outrageous" when it is so "`"extreme as to exceed all bounds of that usually tolerated in a civilized community."'" (Potter, at p. 1001.) And the defendant's conduct must be "`"intended to inflict injury or engaged in with the realization that injury will result."'" (Ibid.)" (Hughes v. Pair, 209 P. 3d 963 - Cal: Supreme Court 2009 at 1051)*

179.  Here we find a man who is not only homeless, but also grieving after the death of his mother. ROBERT was an open book to his interviewers, making his condition known to each and every consular representative involved in his quest to return home. Through emails he revealed that he was homeless. The reason for his return is to settle his deceased mother's estate who bequeathed to him certain properties in the Philippines. These properties may very well be the only earthly possession of his mother left to him and something ROBERT viewed as his mother's legacy and part of his ancestral heritage.

180.  The delays, excuses and ultimate denial of his request for a replacement passport amounts to extreme and outrageous behavior insofar as the consulate remains the only source of travel documents. It was calculated to inflict injury with the clear knowledge of its effects. All such actions and deprivations have caused him serious distress including feelings of suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, bitterness, frustration and interrupted sleep.

**DEFENDANTS' APPOINTMENT CANCELLATION UNFAIR UNDER UCL LAWS**

181.  On July 19, 2021 ROBERT requested an appointment at the consulate office in San Diego. Weary of the pandemic, he calculated that because of its location less people are prone to seek appointments there. (SEE EXHIBIT C – Email #01) According to the staff, the soonest that could be scheduled was August 19, 2021 at 1:15PM, which ROBERT accepted.

182.  Uncertain of train travel procedures, ROBERT traveled from

the City of Orange by bus to the AmTrak train station in Santa Ana on the morning of the 16th. He bought his round-trip ticket (EXHIBIT G) and acquainted himself with the boarding procedures. He had planned to take the earliest bus on the morning of the appointment to arrive at the train station at 7AM. It was going to be his first train ride to San Diego. He did not want to risk delays or other complications that would prevent him from arriving timely for his appointment. He doubted he would have the time to purchase the tickets that morning.

183.   When he returned, an email from the consul office in San Diego was waiting in his inbox. They unilaterally cancelled his appointment for the 19th. The reason, the email read:

>    *"We regret to inform that we have to cancelled your appointment here in San Diego, as we cannot process your request for emergency travel document." (EXHIBIT C — Email # 24)*

184.   ROBERT had sought an appointment for two reasons. First, he needed consular notary service for two documents to be filed in a Philippine court. Second, he sought travel documents to the Philippines. At that time, he was only able to gather documents for an "Emergency Travel Document." At least in the days prior, he was in the process of collecting and copying all the papers required.

185.   According to their website (www.philippineconsulatela.org), the consul office in San Diego offers all the services that ROBERT sought, including:

>    *Services being offered at the Honorary Consulate in San*

1    *Diego, CA:*

2    *– Consularization / authentication of documents;*

3    *– Issuance of emergency Travel Document;*

4    *– Issuance of mortuary certificates*

5

6    186.  The cancellation of the appointment was unfair, in the

7    meaning of California's Unfair Competition Laws (UCL), in that

8    ROBERT had procured the things required of him by DEFENDANTS,

9    made travel arrangements including the purchase of train tickets,

10   among others. The cancellation caused him at least $14.67 and

11   other expenses including cost for obtaining documents. To

12   facilitate the (Self-Stamped Return Envelope) transaction, ROBERT

13   even obtained a mailbox. Such expenditures may not

14   be considerable to most other people. However, for a homeless

15   individual on an extreme budget, it is oppressive.

16

17            **ROBERT'S RIGHT TO EQUAL PROTECTION CLEARLY VIOLATED**

18   187.  ROBERT sought a passage back to the land of his birth.

19   Although hampered by certain financial limitations, he found

20   obtaining a replacement passport provides him the flexibility of

21   the time and means to travel back to the Philippines. The

22   original request for "Emergency Travel Document" proved to be too

23   expensive and required purchasing travel tickets (travel

24   itinerary) before even being granted travel credentials. It risks

25   being declined and the applicant being subjected to cancellation

26   fees.

27   188.  Moreover, the "Emergency Travel Document" is only effective

28   for 30 days, an untenable situation during a pandemic when travel

1   is subject to delays and certain restrictions. Travelers to the
2   Philippines, at least during the time of this controversy, were
3   being quarantined, which would have added unplanned costs because
4   travel must be undertaken within that timeframe.
5   189.  For the purpose of this action, ROBERT invokes his right as
6   a Philippine national to return to his home country. At the
7   present time both the Philippines and the USA enjoy normal
8   diplomatic relations such that he is not subject to any
9   restrictions. Travel there is a right that is currently available
10  to those similarly situated but not available to ROBERT, despite
11  presenting all the documents required to obtain a replacement
12  passport.
13  190.  To deny ROBERT a replacement passport, DEFENDANTS stated
14  that the original appointment was for an "Emergency Travel
15  Document" and not a replacement passport. They were exercising
16  COVID-19 precautions. It was a glaring act of inflexibility
17  considering no added measures were required as both documents
18  will result in his entry into the country. When ROBERT presented
19  DEFEDANTS with all the documents for a replacement passport, they
20  engineered pretended reasons that included an unreadable middle
21  name (Lagdameo) on his birth certificate and a variance between
22  the name (Roberto) that appeared on his birth certificate and the
23  name (Robert) that appeared on his California-issue
24  identification card.
25  191.  As a matter of law, DEFENDANTS cannot deny ROBERT the same
26  rights and privileges that they normally would to those similarly
27  situated. For the purpose of this action, ROBERT asserts that one
28  of the reasons for the denial of a replacement passport, which

would allow him to travel to the Philippines, is his confessed homelessness. All such deprivations violate ROBERT'S rights to equal protection under the law, guaranteed by the 14th Amendment of the Constitution of the United States of America.

**COLOR OF LAW VIOLATION ARISING FROM DIPLOMATIC TIES**

192.   The Philippine diplomatic mission in the USA exists because of treaties entered into by the governments of the USA and the Republic of the Philippines. The violations complained of in this action would not have been possible had it not been for the privileges accorded to it by the US government. Color of law violations require the nexus of relationship between the actor and the government. That fact is now beyond dispute.

193.   ROBERT argues that DEFENDANTS were acting under color of law, principally in furtherance of Philippine and US diplomatic agreements and aspirations. Hence, the DEFENDANTS were clothed on authority, acting in their official and personal capacities.

194.   The 9th Circuit once ruled that a chaplain within a state prison was a state actor in the meaning of 42 USC § 1983. Accordingly, it would be incomprehensible for the courts to rule that such a nexus does not exist between the two allied nations. The Philippine diplomatic mission is a government entity and exists here in the United States under the exclusive auspices of the US government.

Case laws on 42 USC § 1983 provide:

> "*A defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed*

56

1     *with the authority of state law.'" West v. Atkins, 487 U.S.*

2     *42, 49 (1988) (quoting United States v. Classic, 313 U.S.*

3     *299, 326 (1941)); see also Polk County v. Dodson, 454 U.S.*

4     *312, 317-18 (1981); Anderson v. Warner, 451 F.3d 1063, 1068*

5     *(9th Cir. 2006); McDade v. West, 223 F.3d 1135, 1139-40 (9th*

6     *Cir. 2000); Johnson v. Knowles, 113 F.3d 1114, 1117 (9th*

7     *Cir. 1997); Vang v. Xiong, 944 F.2d 476, 479 (9th Cir.*

8     *1991); see also Florer v. Congregation Pidyon Shevuyim,*

9     *N.A., 639 F.3d 916, 922 (9th Cir. 2011) (determining whether*

10    *private entities operating as contract chaplains within the*

11    *Washington State prison system were state actors for*

12    *purposes of § 1983 and RLUIPA)."*

13

14    195.  Moreover, ROBERT alleges that the deprivations complained

15    of were the result of DEFENDANT'S policy, practice and custom

16    instituted by CONGEN/SD and CONGEN/LA and their leadership.

17    Specific to these are the contributions by CONGEN/SD and

18    CONGEN/LA who were heading the missions in their respective

19    cities. It began with the wayward dealings at the consulate

20    office in San Diego, with the delays and cancellation of

21    appointments, which ended with the unreasonable denial of

22    ROBERT'S application for a replacement passport at

23    the consulate office in Los Angeles. There were at least two

24    individuals in San Diego (Ms. Borge and Ms. Esteban) and at least

25    three individuals in Los Angeles (Michelles,

26    unnamed representative and Ms. Mendoza) whom, through their

27    machinations, conspired to deprive ROBERT his passport.

28    197.  An error by an employee or agent under the definition

57

of respondeat superior will not hold in a Section 1983 case. Here we see a concerted effort by numerous individuals consistent with policy, practice and custom peculiar to DEFENDANTS, to deny ROBERT entry to the Philippines because of his homelessness and presumed future dependency on the government of the Philippines upon his return.

**FEDERAL FINANCIAL AID PROHIBITS DISCRIMINATORY PRACTICES**

196. According to the Foreign Assistance.gov, from January 2001 until July 2021, the Philippines received $428,281,964 in aid of various forms from the United States.

https://foreignassistance.gov/cd/philippines/

197. According to US Aid, through an article published on April 15, 2020:

*"The U.S. government has provided an additional Php66 million ($1.3 million) to combat the COVID-19 outbreak in the Philippines, bringing total U.S. government assistance to more than Php203 million ($4 million) to date."*

https://www.usaid.gov/philippines/press-releases/apr-15-2020-us-provides-additional-php66-million-support-philippines

198. According to the US Department of State:

*"Over the last decade, disaster relief and recovery has also become an increasingly important area of assistance to the Philippines.  The United States has provided over $143 million in assistance to date to the people of the Philippines in relief and recovery efforts after Typhoon Haiyan/Yolanda devastated the country in 2013.  The United*

1     *States continues to support long-term reconstruction and*

2     *rebuilding efforts, and has allocated over $60 million to*

3     *support ongoing humanitarian assistance and stabilization*

4     *funding in response to the Marawi siege."*

5     https://www.state.gov/u-s-relations-with-the-philippines/

6

7     199.   In September 2021, the Manila Times reported:

8     *"(Presidential spokesman), Harry Roque Jr., said the*

9     *Philippines had been receiving far less military assistance*

10    *than other countries the US has a similar pact with. Roque*

11    *said the Philippines should get at least what Pakistan is*

12    *getting, about $16.4 billion in military aid."*

13    https://www.manilatimes.net/2021/03/06/news/national/us-

14    gives-in-to-duterte-demand-for-military-aid/847802/

15

16    200.   Assuming that the figures are incorrect by virtue of

17    incomplete entry or accounting errors, it still cannot be denied

18    the Philippine government receives aid from the US government,

19    which is subject to the provisions and prohibitions of 42 USC §

20    2000d. This includes relief from this court in the form of an

21    injunctive order and others that it deems fit and proper as a

22    matter of private cause of action.

23

24                        **CAUSES OF ACTION**

25                      **FIRST CAUSE OF ACTION**

26         (Fraud – California Civil Code 1709 § 1710)

27    201.   Plaintiff incorporates by reference the allegations in all

28    preceding paragraphs of this complaint as though fully set forth

in this paragraph.

202.   DEFENDANTS induced ROBERT to engage them in consulate services for legal documents to be filed in the Philippine courts. They are also the only source of passports for Filipino nationals who wish to travel to and from the country.

203.   California Civil Code 1709 § 1710 provides.

> 1709.   One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

> 1710. A deceit, within the meaning of the last section, is either:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

> 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

> 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

> 4. A promise, made without any intention of performing it.

204.   ROBERT claims that DEFENDANT PHILIPPINES made false representations that harmed his interests. To establish these claims, ROBERT will prove all of the following:

1. That DEFENDANTS represented to ROBERT facts that were not true including:

a. DEFENDANTS, by and through the consulate office in San Diego, scheduled an appointment with ROBERT without any intention of honoring it. They cancelled the appointment without good cause, despite a request for services that they were able to perform, causing ROBERT to pay cancellation fees in the amount of $14.67 to Amtrak, among other expenses.

b. DEFENDANTS, by and through the consulate office in Los Angeles, denied ROBERT a replacement passport using fraudulent reasons, including:

    a)    Asserting that his middle name (mother's maiden name) on the birth certificate was not readable and could not be corroborated by his mother's death certificate or information on their database.

    b)    Asserting that the COVID-19 pandemic did not give them the flexibility to change their appointment from a request for emergency travel document to a replacement passport.

    c)    Asserting that the variance of the name ROBERTO that appears on his birth certificate and ROBERT on his California Identification Card could not be explained away, denying his request for a replacement passport.

    d)    ROBERT sought a replacement for his lost passport. In his interactions with the consulate officers, they hid the fact that all the information such as his first and middle names are

1              already known to them. A replacement passport

2              means that a previous passport was already issued,

3              suppressing information and misleading ROBERT to

4              believe that his documents were inadequate and

5              that his return appointment was necessary.

6    5. That DEFENDANTS, by and through its consulate offices knew

7       the representations were false;

8    6. That DEFENDANTS, by and through its consulate offices, knew

9       that the representations were false when it was made it,

10      doing so without regard for its truth;

11   7. That DEFENDANTS, by and through its consulate offices,

12      intended that ROBERT rely on the representations;

13   8. That ROBERT reasonably relied on DEFENDANTS', by and through

14      its consulate offices, representations;

15   9. That ROBERT was harmed; and

16   10.    That ROBERT'S reliance on DEFENDANTS representations

17      was a substantial factor in causing his harm.

18

19                     **SECOND CAUSE OF ACTION**

20        (Negligence – California Civil Code § 1714(a))

21   205.  Plaintiff incorporates by reference the allegations in all

22   preceding paragraphs of this complaint as though fully set forth

23   in this paragraph.

24   206.  California Civil Code § 1714(a), provides in relevant

25   parts:

26        *"Everyone is responsible, not only for the result of*

27        *his or her willful acts, but also for an injury occasioned*

28        *to another by his or her want of ordinary care or skill in*

                                    62

*the management of his or her property or person, except so*

*far as the latter has, willfully or by want of ordinary*

*care, brought the injury upon himself or herself."*

207.   ROBERT claims that DEFENDANT PHILIPPINES' conduct caused him to suffer severe emotional distress. To establish this claim, ROBERT will prove all of the following:

  1. That DEFENDANTS' conduct was outrageous;

  2. That DEFENDANTS intended to cause ROBERT emotional distress;

  3. That ROBERT suffered severe emotional distress; and

  4. That DEFENDANTS conduct was a substantial factor in causing ROBERT's severe emotional distress.

### THIRD CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)

208.   Plaintiff incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

209.   ROBERT claims that DEFENDANTS' conduct caused him to suffer severe emotional distress. To establish this claim, ROBERT will prove all of the following:

  1. That DEFENDANTS' conduct was outrageous;

  2. That DEFENDANTS negligently caused him emotional distress;

  3. That ROBERT suffered severe emotional distress;

  4. That DEFENDANTS' conduct was a substantial factor in causing ROBERT's severe emotional distress; and

  5. That ROBERT experienced serious distress including: feelings

63

1    of suffering, anguish, fright, horror, nervousness, grief,

2    anxiety, worry, shock, humiliation, shame, bitterness,

3    frustration and interrupted sleep.

4

5                        **FOURTH CAUSE OF ACTION**

6          (Intentional Infliction of Emotional Distress)

7    210.  Plaintiff incorporates by reference the allegations in all

8    preceding paragraphs of this complaint as though fully set forth

9    in this paragraph.

10   211.  The cause of action intentional infliction of emotional

11   distress include the following elements:

12       *"The elements of the tort of intentional infliction of*

13       *emotional distress are: `"(1) extreme and outrageous conduct*

14       *by the defendant with the intention of causing, or reckless*

15       *disregard of the probability of causing, emotional distress;*

16       *(2) the plaintiff's suffering severe or extreme emotional*

17       *distress; and (3) actual and proximate causation of the*

18       *emotional distress by the defendant's outrageous*

19       *conduct...."* Conduct to be outrageous must be so extreme as*

20       *to exceed all bounds of that usually tolerated in a*

21       *civilized community.' [Citation.] The defendant must have*

22       *engaged in `conduct intended to inflict injury or engaged in*

23       *with the realization that injury will result."* (Potter v.*

24       *Firestone Tire & Rubber Co., 863 P. 2d 795 – Cal: Supreme*

25       *Court 1993 at 1001)*

26

27   212.  ROBERT claims that DEFENDANTS' conduct caused him to suffer

28   severe emotional distress. To establish this claim, ROBERT will

                                   64

1  prove all of the following:

2      1. That DEFENDANTS' conduct was outrageous;

3      2. That DEFENDANTS intended to cause ROBERT emotional distress;

4      3. That ROBERT suffered severe emotional distress; and

5      4. That DEFENDANTS' conduct was a substantial factor in causing

6         ROBERT's severe emotional distress.

7

8                        **FIFTH CAUSE OF ACTION**

9         (Unruh Civil Rights Act – California Civil Code § 51)

10  213.  Plaintiff incorporates by reference the allegations in all

11  preceding paragraphs of this complaint as though fully set forth

12  in this paragraph.

13  214.  The California Unruh Civil Rights Act, provides in relevant

14  parts:

15         *"All persons within the jurisdiction of this state are free*

16         *and equal, and no matter what their sex, race, color,*

17         *religion, ancestry, national origin, disability, medical*

18         *condition, genetic information, marital status, sexual*

19         *orientation, citizenship, primary language, or immigration*

20         *status are entitled to the full and equal accommodations,*

21         *advantages, facilities, privileges, or services in all*

22         *business establishments of every kind whatsoever."*

23

24  215.  ROBERT claims that DEFENDANTS denied him full and equal

25  services, including but not limited to, denying his application a

26  for replacement of his lost passport because of his confessed

27  homelessness and perceived inability to support himself

28  while traveling in the Philippines. To establish this claim,

65

1  ROBERT will prove all of the following:

2    1. That DEFENDANTS denied full and equal services by failing to

3       issue a replacement for passport to ROBERT;

4    2. That a substantial motivating reason for DEFENDANTS' conduct

5       was its determination of ROBERT'S homelessness and condition

6       of lack that would cause him to be a ward of the state upon

7       his arrival there;

8    3. That ROBERT was harmed; and

9    4. That DEFENDANTS' conduct was a substantial factor in causing

10      ROBERT'S harm.

11

12                         **SIXTH CAUSE OF ACTION**

13  (Bus & Prof Code § 17200 – California Unfair Competition Laws)

14  216.  Plaintiff incorporates by reference the allegations in all

15  preceding paragraphs of this complaint as though fully set forth

16  in this paragraph.

17  217.  ROBERT claims that he lost money and valuable time as a

18  result of DEFENDANT CONGEN/SD unilaterally cancelling his

19  appointment without good cause. Bus & Prof Code § 17200 prohibits

20  unfair business practices that are harmful to consumers.

21  218.  To establish this claim, ROBERT will prove all

22  of the following:

23    1. That DEFENDANT PHILIPPINES by and through DEFENDANT

24       CONGEN/SD and CONGEN/LA, and because of exclusive offerings,

25       compelled ROBERT to engage them in procuring consular

26       services;

27    2. That DEFENDANT PHILIPPINES by and through DEFENDANT

28       CONGEN/SD, scheduled an appointment with ROBERT on August

66

1    19, 2021 without the intention of honoring it and eventually

2    cancelling it;

3  3. That DEFENDANT PHILIPPINES by and through DEFENDANT

4    CONGEN/SD, caused ROBERT to spend money for a mailbox,

5    incurred expenses for the appointment including obtaining

6    documents and making travel arrangements;

7  4. That DEFENDANT PHILIPPINES by and through DEFENDANT

8    CONGEN/SD, cancelled ROBERT'S appointment causing him to pay

9    cancellation fees in the amount of $14.67 among others.

10  5. That ROBERT was harmed;

11  6. That DEFENDANTS' conduct amounts to "Unfair Practices" in

12    the meaning of Bus & Prof Code § 17200 and was a substantial

13    factor in causing ROBERT'S harm; and

14  7. That DEFENDANTS' conduct was a substantial factor in causing

15    ROBERT'S harm.

16

17                        **SEVENTH CAUSE OF ACTION**

18  (42 U.S. Code § 1983 - Civil action for deprivations of rights)

19  219.  Plaintiff incorporates by reference the allegations in all

20  preceding paragraphs of this complaint as though fully set forth

21  in this paragraph.

22  220.  42 U.S. Code § 1983 provides:

23        "*Every person who, under color of any statute,*

24        *ordinance, regulation, custom, or usage, of any State or*

25        *Territory or the District of Columbia, subjects, or causes*

26        *to be subjected, any citizen of the United States or other*

27        *person within the jurisdiction thereof to the deprivation of*

28        *any rights, privileges, or immunities secured by the*

67

*Constitution and laws, shall be liable to the party injured*
*in an action at law, suit in equity, or other proper*
*proceeding for redress, except that in any action brought*
*against a judicial officer for an act or omission taken in*
*such officer's judicial capacity, injunctive relief shall*
*not be granted unless a declaratory decree was violated or*
*declaratory relief was unavailable. For the purposes of this*
*section, any Act of Congress applicable exclusively to the*
*District of Columbia shall be considered to be a statute of*
*the District of Columbia."*

221.  ROBERT claims that DEFENDANTS, collectively and severally
deprived him of rights protected by the US Constitution.
Specifically, DEFENDANTS deprived him the right of travel and the
freedom of movement, violating the 14th Amendment equal
protection clause, which provides:

*"All persons born or naturalized in the United States,*
*and subject to the jurisdiction thereof, are citizens of the*
*United States and of the State wherein they reside. No State*
*shall make or enforce any law which shall abridge the*
*privileges or immunities of citizens of the United States;*
*nor shall any State deprive any person of life, liberty, or*
*property, without due process of law; nor deny to any person*
*within its jurisdiction the equal protection of the laws."*

222.  To establish this claim, ROBERT will prove all of the
following:

  1. That DEFENDANTS concocted pretended reasons and excuses to

68

1    deny ROBERT'S application for a replacement of his lost

2    passport;

3    2. That DEFENDANTS were acting under the color of law as a

4    foreign government under a diplomatic mission in the United

5    States;

6    3. That DEFENDANTS were in complete view of the harm they were

7    causing having been told that ROBERT was traveling to settle

8    his mother's estate and after having been presented with her

9    death certificate;

10    4. That ROBERT was harmed; and

11    5. That DEFENDANTS' conduct was a substantial factor in causing

12    ROBERT'S harm.

13

14                        **EIGHTH CAUSE OF ACTION**

15    (42 U.S. Code § 2000d - Prohibition against exclusion)

16    223.  Plaintiff incorporates by reference the allegations in all

17    preceding paragraphs of this complaint as though fully set forth

18    in this paragraph.

19    224.  42 USC § 2000d provides:

20    *"No person in the United States shall, on the ground of*

21    *race, color, or national origin, be excluded from*

22    *participation in, be denied the benefits of, or be subjected*

23    *to discrimination under any program or activity receiving*

24    *Federal financial assistance."*

25

26    225.  ROBERT claims that DEFENDANTS denied him full and equal

27    accommodations, including but not limited to, failing to provide

28    a replacement for ROBERT'S lost passport because of his confessed

homelessness and their perceived inability to support himself while traveling in the Philippines. To establish this claim, ROBERT will prove all of the following:

1. That DEFENDANT has a policy to exclude foreigners travelling to the Philippines who by appearance or admission may become a ward of the state during his/her travel;

2. That the policy was wrongfully and unlawfully being applied to ROBERT who is a Philippine national;

3. That DEFENDANTS knew that ROBERT was homeless;

4. That DEFENDANTS knew that ROBERT was a Filipino national and not a visitor to the country;

5. That DEFENDANTS, through misrepresentations and deceit, conspired to deprive ROBERT the means to travel there, cancelling an appointment with him, delaying assistance, using pretended excuses of typographical uncertainty (Lagdameo) and variances of his first name (Roberto & Robert) as excuses not to issue a replacement passport;

6. That DEFENDANTS sought to deprive him of his right to travel and move freely by asking another document that is a functional duplicate of his birth certificate, which he already presented to them. And that the document could only be obtained in Manila at significant cost to ROBERT;

7. That all the information DEFENDANTS needed to ascertain his true middle name and identity are available to them because ROBERT is seeking a replacement for his lost passport, meaning his information was already previously collected for his passport;

8. That DEFENDANTS' actions were deliberate

70

1      and disparate actions that were discriminatory towards

2      ROBERT;

3    9. That ROBERT was harmed; and

4    10.     That DEFENDANTS were the direct cause of his injury.

5

6                        **REQUEST FOR RELIEF**

7    226.  WHEREFORE, Plaintiff requests judgment against DEFENDANTS,

8    as set forth herein below:

9    1. Issue an injunctive order for DEFENDANTS to deliver to

10      ROBERT a replacement for his lost Philippine passport;

11   2. Declare that disparate impact policies instituted by

12      DEFENDANTS discriminated against ROBERT;

13   3. Declare that policies instituted by DEFENDANTS deprived

14      ROBERT of his 14th Amendment Right to equal protection under

15      the law.

16   4. Pursuant to the First, Second, Third, Fourth, Fifth, Sixth,

17      Seventh and Eighth Causes of Action, grant compensatory

18      penalties and permissible damages according to proof;

19   5. Pursuant to California Civil Code §3294, grant punitive

20      damages according to proof;

21   6. Pursuant to 42 USC § 1983, grant punitive damages according

22      to proof;

23   7. Enter all and such orders required to restore money and/or

24      property, which may have been lost or displaced by means of

25      these unlawful acts, as provided by applicable laws;

26   8. Award Plaintiff his costs of suit;

27   9. Grant such other and further relief as the Court deems just

28      and proper.

**BENCH TRIAL COMPULSARY**

227.   28 USC § 1330 does not make available a trial by jury.


Respectfully submitted,

Dated: September 22, 2021


/s/ Robert Lacambra

ROBERT LACAMBRA - Plaintiff, In Pro Se

1                     **VERIFICATION**

2     I, Robert Lacambra, am the Plaintiff in the above-entitled

3 action. I have read the foregoing "Verified Complaint" and know

4 the contents thereof. The same is true of my own knowledge,

5 except as to those matters which are therein alleged on

6 information and belief, and as to those matters, I believe it to

7 be true.

8     I declare under penalty of perjury under the laws of the

9 United States of America that the foregoing is true and correct

10 and that this declaration was executed at the City

11 of Orange, California.

12

13 Dated: September 20, 2021

14

15 /s/ Robert Lacambra

16 ROBERT LACAMBRA - Plaintiff, In Pro Se

17

18

19

20

21

22

23

24

25

26

27

28

US DISTRICT COURT
CENTRAL DISTRICT – SOUTHERN DIVISION
LACAMBRA V. REPUBLIC OF THE PHILIPPINES

# EXHIBIT LIST

EXHIBIT A – BURGLARY POLICE REPORT

EXHIBIT B – MOTHER'S DEATH CERITIFICATE

EXHIBIT C – ALL EMAILS BETWEEN PARTIES

EXHIBIT D – PROMISED APPOINTMENT LETTER

EXHIBIT E – 2ND REQUEST FOR IMMEDIATE RESPONSE

EXHIBIT F – AFFIDAVIT OF SUPPORT

EXHIBIT G – TRAIN TICKET TO SAN DIEGO

EXHIBIT H – AMTRAK REFUND TICKET

EXHIBIT I – NOTARY RECEIPT

EXHIBIT J – APPOINTMENT TICKET

EXHIBIT K – PASSPORT APPLICATION

EXHIBIT L – ROBERT'S BIRTH CERTIFICATE

EXHIBIT M – PICTURE OF RECEPTION AT 845AM

EXHIBIT N – ROBERT'S SOCIAL SECURITY CARD

EXHIBIT O – ROBERT'S CA/ID & CDL

EXHIBIT P – SPECIAL POWER OF ATTORNEY

EXHIBIT Q – RP FORM – AFFIDAVIT OF LOSS

EXHIBIT R – MAILBOX-IT RECEIPT

# EXHIBIT A



# Orange Police Department
CA

Orange Police Department

Case #:20-06-0584                                    Incident #: 20-06-0584

| Event |
|---|

## 493 N Glassell St ORANGE, CALIFORNIA 92866

| | |
|---|---|
| Type of Incident: | PC 459 - VEHICLE BURGLARY |
| Date/Time Reported: | 06/18/2020 16:57:52 |
| Date/Time Started: | 06/18/2020 16:57:52 |
| Date/Time Ended: | 06/18/2020 20:16:00 |
| RD: | RD 23W |
| Report Type: | INITIAL |
| CHP 180: | No |
| Domestic Violence: | No |
| Hate Crime / Incident: | No |
| Serialized Property: | No |
| Gang Related: | No |
| Elder Abuse: | No |
| Homeland Security: | No |
| PRCS, Parole, Probation: | No |
| Transient: | No |
| Evidence Collected: | Yes |
| Latent Prints: | No |
| Photos Taken: | Yes |
| Surveillance Video: | No |
| DNA: | Yes |
| Blood: | No |
| Comments: | |

| Suspects (1) |
|---|

## UNKNOWN,

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Person Number: | 1 |
| Home Phone #: | |
| Work Phone #: | |
| Cellular phone #: | |
| Misc: | |
| Occupation Code: | |

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. dacambra
DATE: 6/30/20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

# Orange Police Department

CA

Orange Police Department

Case #:20-06-0584                                          Incident #: 20-06-0584

| Victim (1) |
|---|

**LACAMBRA, ROBERT NELSON**

| | |
|---|---|
| Victim Type: | PERSON / INDIVIDUAL (NOT A LAW ENFORCEMENT OFFICER) |
| Person Number: | 1 |
| Related Type of Crimes: | 459 BURGLARY |
| Address: | TRANSIENT |
| City: | ORANGE |
| State: | CALIFORNIA |
| Zip: | 92867 |
| County: | ORANGE |
| Country: | USA (UNITED STATES OF AMERICA) |
| Relationship To Offender: | UNKNOWN UNKNOWN , Stranger - Unknown |
| Victim Burglary, Larceny or Robbery: | ABSENT |
| Domestic Violence: | No |
| Date of Birth: | 09/25/1965 |
| Age: | 54 |
| Sex: | MALE |
| Race: | Filipino |
| Ethnicity: | NON-HISPANIC |
| Injury: | No |
| Work Phone #: | |
| Cellular Phone #: | (949)-426-8730 |
| DL Number: | C3301950 |
| DL State: | CALIFORNIA |
| Email: | ROBERTSJUSTICE@LIVE.COM |

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. Lacambra
DATE: 6/30/20 BY: _____ KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

# Orange Police Department
CA

Case #:20-06-0584　　　　　　　　　　　　　　　　Incident #: 20-06-0584

| Offenses (1) |
|---|

### 459 BURGLARY

| | |
|---|---|
| UCR/NIBRS Code: | 06d. Larceny/Theft d. From Motor Vehicles (except e.) |
| Felony/Misdemeanor: | FELONY |
| UCR Class: | LARCENY THEFT (EXCEPT MOTOR VEHICLES) |
| UCR SubClass: | THEFT FROM MOTOR VEHICLE |
| Degree: | F |
| State Code: | 400 |
| UCR Hierarchy: | 12900 |
| Offense Location: | LIQUOR STORE |
| Premise: | GAS / SERVICE STATION |
| Bias Motivation Crime: | NONE |
| Method of Entry: | SMASH GLASS |
| Instr Tool Used: | OTHER |
| Point Of Entry: | REAR WINDOW |
| Forcible (Property Crime Only): | YES |
| Scene Visibility: | CLEAR |
| Time Of Day: | Night |
| Counts (Records Only): | 1 |
| Crime Prevention Follow Up Needed: | No |

| Vehicle (1) |
|---|

### 1990 GMC Suburban

| | |
|---|---|
| Related Offense: | 459 BURGLARY |
| VIN: | 1GKGR26N1LF508535 |
| Vehicle Type: | STATION WAGON |
| Status: | VICTIM VEHICLE |
| Damage: | REAR PASSENGER WINDOW SMASH |
| Style: | STATION WAGON |
| Color(s): | Blue |
| Plate No.: | 80553M1 |
| Year of Plate: | 2017 |
| State of Plate: | CALIFORNIA |
| Related To: | LACAMBRA ROBERT NELSON |

| Property (17) |
|---|

### BAG

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black |
| Property Value: | █ |
| Related To: | LACAMBRA ROBERT NELSON |

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. Lacambra
DATE: 6/30/20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

# Orange Police Department
CA

Orange Police Department

Case #:20-06-0584

Incident #: 20-06-0584

## LAPTOP 15 INCH W CHARGING CABLE

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Aluminum/Silver |
| Make: | HP |
| Serial: | NONE |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## BATTERY PACK W CABLE

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black |
| Make: | ANKER |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## PHILIPPINES BIRTH CERTIFICATE

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## VEHICLE REGISTRATION

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Serial: | 80553M1 |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## HARDDRIVE 1TB

| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black |
| Make: | WESTERN DIGITAL |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: _Robert N. Lacambra_
DATE: _6/30/20_ BY: _KL 1378_
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.



# Orange Police Department
CA

Orange Police Department

Case #:20-06-0584

Incident #: 20-06-0584

## PINK SLIP
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Serial: | 80553M1 |
| Property Value: | |
| Related To: | LACAMBRA ROBERT NELSON |

## COURT DOCUMENTS
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Property Value: | |
| Related To: | LACAMBRA ROBERT NELSON |

## CASE
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black |
| Property Value: | |
| Related To: | LACAMBRA ROBERT NELSON |

## FLASHDRIVES
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 7.0000 |
| Property Value: | |
| Related To: | LACAMBRA ROBERT NELSON |

## BAG
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black |
| Property Value: | |
| Related To: | LACAMBRA ROBERT NELSON |

## LONG SLEEVE SHIRT
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black, Red, Aluminum/Silver |
| Property Value: | |
| Related To: | LACAMBRA ROBERT NELSON |

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. Lacambra
DATE: 6/30/20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

# Orange Police Department
CA

Orange Police Department

Case #:20-06-0584                                            Incident #: 20-06-0584

## MISC TOOLS
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 4.0000 |
| Color: | Aluminum/Silver |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## BIKE LOCK
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Black |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## Camera sling bag
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Beige |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## Bag
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Color: | Blue, Gray |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

## Miscellaneous court documents
| | |
|---|---|
| Related Type of Crimes: | 459 BURGLARY |
| Property Status: | STOLEN |
| Quantity: | 1.0000 |
| Property Value: | ▮ |
| Related To: | LACAMBRA ROBERT NELSON |

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. Lacambra
DATE: 6/30/20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

---

### Narrative (1)

Mondragon, Matthew 1662                                            06/19/2020

## SYNOPSIS:

Robert Lacambra's vehicle was parked at 493 N. Glassell Street. Lacambra returned to his vehicle and

# Orange Police Department

CA

Case #:20-06-0584

Incident #: 20-06-0584

discovered the rear passenger window smashed.

## FACTS:

On June 18, 2020, at approximately 1919 hours, I was working uniformed patrol in a marked Orange Police Department vehicle. My vehicle was equipped with a Mobile Audio Video (MAV) device, which was not active during this incident.

I was dispatched to Hooves Liquor (493 N. Glassell Street), reference a vehicle burglary investigation. Dispatch advised the calling party's vehicle had the rear passenger window smashed. Dispatch advised the loss was a computer and miscellaneous documents.

I arrived on scene and contacted the victim, Robert Lacambra (DOB: 09/25/65), who told me the following:

Lacambra is homeless and lives out of his vehicle.

███████████████████████████████████

Lacambra stated he works at Hooves Liquor and was allowed by the owner to park his vehicle to the rear of the business. Lacambra's vehicle has been parked in the rear alley for approximately three years and has not moved.

On June 18, 2020, at approximately 0915 hours, Lacambra left his vehicle to go visit his family in the City of Costa Mesa. Lacambra ensured his vehicle was locked and secured.

At approximately 1630 hours, Lacambra returned to his vehicle and discovered his rear passenger window was smashed. Lacambra stated he opened his driver side door and reached inside to open the rear passenger door. Lacambra noticed the door was already unlocked. Lacambra then put on a pair of gloves before he touched anything inside the vehicle. Lacambra noticed a black, metal rod was inside his vehicle where the window smash was. Lacambra moved the metal rod and placed it inside a trash bag prior to our arrival. Lacambra stated the metal rod was not his.

Lacambra stated three different bags were missing with different items in each bag. Lacambra stated each bag was located in his backseat on the floorboard. Lacambra detailed the following items as missing:

Bag #1:

Black computer bag ████

Silver HP 15inch laptop with charging cable ████

Key to unlock vehicle

Anker battery pack with charger ████

ORANGE POLICE DEPARTMENT AUTHORIZED COPY RELEASE TO: Robert N. Lacambra
DATE: 6/30/20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR TRANSFERRED TO ANOTHER PERSON OR AGENCY AND IS TO BE DESTROYED BY THE ABOVE NAMED INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS ORIGINAL USE. ORANGE POLICE DEPARTMENT.

**Orange Police Department**

CA

Orange Police Department

Case #:20-06-0584

Incident #: 20-06-0584

Philippines birth certificate

Western Digital portable 1TB hard drive ████

Registration to his vehicle

Pink slip for his vehicle

Miscellaneous court documents

Black case ████

7 flash drives ████

Bag #2:

Black backpack ████

Long sleeve shirt ████

Miscellaneous tools (4) ████

Bike lock ████

Black camera sling bag ████

Bag #3:

Blue/grey bag ████

Miscellaneous court documents

Lacambra estimated the loss at ████

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. Lacambra
DATE: 6/30/20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

Lacambra has two sets of keys for the vehicle. One key is kept on his person and the other key was located inside one of the stolen bags. Lacambra did not see anything suspicious when he left his vehicle. Lacambra did not give anyone permission to enter his vehicle and is desirous of prosecution. No witnesses or suspects were seen at the time of the incident.

I took digital photographs of the interior and exterior of Lacambra's vehicle. I later downloaded the images into the DIMS system.

I checked the surrounding area for surveillance cameras and located a camera affixed to the northwest corner of Hooves Liquor. The camera was facing eastbound on Walnut Avenue, but did not have visual of the rear alley. At this time, there was no access to the surveillance footage.

Lacambra stated there were hand imprints on the driver side windows of his vehicle. I observed hand prints on both windows. I used black fingerprint powder and attempted to dust the windows for fingerprints. Due to dirt and debris, I was unable to locate any workable latent prints.

**Orange Police Department**

CA

Orange Police Department

---

Case #:20-06-0584

Incident #: 20-06-0584

Using a sterile DNA cotton swab and distilled water, I processed the following locations for DNA:

Rear driver window

Rear passenger interior door handle

Rear passenger exterior door handle

Lacambra provided an elimination DNA swab. I later booked the DNA swabs and the metal rod into OPD Property as evidence.

I provided Lacambra with an OPD report information pamphlet which contained the report number and Marsy's law victim's bill of rights.

Forward to OPD Detectives for follow up.

At the same location, a vehicle parked adjacent to Lacambra's had damage to the driver side door. Refer to DR 20-06-0586 for further.

**EVIDENCE:**

Digital photographs

DNA cotton swab

DNA elimination buccal swab

ORANGE POLICE DEPARTMENT AUTHORIZED COPY
RELEASE TO: Robert N. Lacambra
DATE: 6|30|20 BY: KL 1378
NOTICE: THIS COPY IS NOT TO BE DUPLICATED OR
TRANSFERRED TO ANOTHER PERSON OR AGENCY
AND IS TO BE DESTROYED BY THE ABOVE NAMED
INDIVIDUAL OR AGENCY UPON COMPLETION OF ITS
ORIGINAL USE. ORANGE POLICE DEPARTMENT.

**STATEMENTS:**

Melendez did not give anyone permission to enter his vehicle and is desirous of prosecution.

**DISPOSITION:**

Robert Lacambra's vehicle was parked at 493 N. Glassell Street. Lacambra returned to his vehicle and discovered the rear passenger window smashed.

Forward to OPD Detectives for further.

| Officer (2) | | |
|---|---|---|
| **Reporting Officer:** | Mondragon, Matthew (1662) | 06/19/2020 17:29:00 |
| **Approving Officer:** | Bevins, Thomas (0824) | 06/20/2020 01:35:58 |

| Attachment Data (1) |
|---|

Description:
File Name: 20-06-0584 - PROP RPT.pdf

---

# EXHIBIT B

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF ORANGE
## HEALTH CARE AGENCY

3052020291916

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
10-1 N/EV 3/00

3202030022249

STATE'S FILE NUMBER

LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT - FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| LINDA | LAGDAMEO | LACAMBRA |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 07/24/1938 | 82 | | | F |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| PI | 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 | YES [X] NO | DIVORCED | 12/12/2020 | 0813 |

| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? (if yes, see instructions on back) | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) | 18. YEARS IN OCCUPATION |
|---|---|---|---|
| BACHELOR | YES [X] NO | FILIPINO | |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| BUSINESS OWNER | IMPORT WHOLESALE | 60 |

**USUAL RESIDENCE / INFORMANT**

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 25002 FAIRTIME CIRCLE |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| LAGUNA NIGUEL | ORANGE | 92677 | 39 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state and zip) |
|---|---|
| WILBERT LACAMBRA, SON | 25002 FAIRTIME CIRCLE, LAGUNA NIGUEL, CA 92677 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE/SRDP –FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| | | |

| 31. NAME OF FATHER/PARENT–FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| ADOLFO | | LAGDAMEO | PI |

| 35. NAME OF MOTHER/PARENT–FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| ADELA | | KIRKWOOD | PI |

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION | RES: WILBERT LACAMBRA |
|---|---|---|
| 12/22/2020 | 25002 FAIRTIME CIRCLE, LAGUNA NIGUEL, CA 92677 | |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CR/RES | ▶ SUSY CRUZ | EMB9633 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| O'CONNOR MORTUARY | FD1293 | ▶ CLAYTON CHAU, MD, PHD | 12/22/2020 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| MEMORIALCARE SADDLEBACK MEDICAL CENTER | [X] IP [ ] ER/OP [ ] DOA | [ ] Hospice [ ] Nursing Home/LTC [ ] Decedent's Home [ ] Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| ORANGE | 24451 HEALTH CENTER DRIVE | LAGUNA HILLS |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH | Enter the chain of events – diseases, injuries, or complications – that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | 108. Time interval between Onset and Death | 109. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) | PNEUMONIA | DAYS | YES [X] NO |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | | | 108. BIOPSY PERFORMED? YES [X] NO |
| (C) | | | 110. AUTOPSY PERFORMED? YES [X] NO |
| (D) | | | 111. USED IN DETERMINING CAUSE? YES [ ] NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| MALNUTRITION |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | YES [X] NO [ ] UNK |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSE STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since: 12/11/2020 Decedent Last Seen Alive: 12/12/2020 | ▶ BENHOOR KHALPARI M.D. | A70272 | 12/21/2020 |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | |
|---|---|
| BENHOOR KHALPARI M.D. 11 TECHNOLOGY DRIVE, IRVINE, CA 92618 | |

**CORONER'S USE ONLY**

| 118. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 119. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH [ ] Natural [ ] Accident [ ] Homicide [ ] Suicide [ ] Pending Investigation [ ] Could not be determined | YES [ ] NO [ ] UNK | | |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| |

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|
| |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▶ | | |

| STATE REGISTRAR | A | B | C | D | E | | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | *0100010047611911* | | |

---

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA  } SS
COUNTY OF ORANGE

DATE ISSUED **December 28, 2020**



This is a true and exact reproduction of the document officially registered and placed on file in the office of the VITAL RECORDS SECTION, ORANGE COUNTY HEALTH CARE AGENCY.

Nichole Quick, MD
NICHOLE QUICK, M.D.
HEALTH OFFICER
ORANGE COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

*004621777*



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT C

US DISTRICT COURT
CENTRAL DISTRICT – SOUTHERN DIVISION
LACAMBRA V. REPUBLIC OF THE PHILIPPINES

## EMAIL INVENTORY LIST

| | DATE | TIME | SOURCE |
|---|---|---|---|
| 1. | 02.27.21 | 1205PM | ROBERT |
| 2. | 03.01.21 | 1023AM | ADMIN/SD |
| 3. | 03.01.21 | 1112AM | ROBERT |
| 4. | 03.02.21 | 1050AM | STAFF/SD |
| 5. | 03.02.21 | 0218PM | LAPCG/LA |
| 6. | 03.03.21 | 1106AM | ROBERT |
| 7. | 04.07.21 | 1120AM | ROBERT |
| 8. | 04.07.21 | 0300PM | STAFF/SD |
| 9. | 04.07.21 | 0412PM | ROBERT |
| 10. | 04.07.21 | 0548PM | STAFF/SD |
| 11. | 05.28.21 | 0958PM | ROBERT |
| 12. | 07.16.21 | 0146PM | ROBERT |
| 13. | 07.17.21 | 0140PM | STAFF/SD |
| 14. | 07.17.21 | 0732PM | ROBERT |
| 15. | 07.17.21 | 0733PM | ROBERT |
| 16. | 07.19.21 | 0934AM | STAFF/SD |
| 17. | 07.19.21 | 0945AM | STAFF/SD |
| 18. | 07.19.21 | 0946AM | STAFF/SD |
| 19. | 08.13.21 | 0932AM | STAFF/SD |
| 20. | 08.13.21 | 1149AM | ROBERT |
| 21. | 08.13.21 | 1218PM | STAFF/SD |
| 22. | 08.13.21 | 1226PM | ROBERT |
| 23. | 08.13.21 | 0208PM | ROBERT |
| 24. | 08.16.21 | 1043AM | STAFF/SD |
| 25. | 08.16.21 | 1046AM | ADMIN/SD |
| 26. | 08.16.21 | 0355PM | ROBERT |
| 27. | 08.16.21 | 0401PM | ROBERT |
| 28. | 08.16.21 | 0415PM | ADMIN/SD |
| 29. | 08.30.21 | 0225PM | ROBERT |
| 30. | 08.31.21 | 0231PM | ROBERT |
| 31. | 09.01.21 | 0439PM | ROBERT |
| 32. | 09.01.21 | 0445PM | ROBERT |
| 33. | 09.02.21 | 0925AM | LAPCG |
| 34. | 09.02.21 | 0944AM | LAPCG |
| 35. | 09.02.21 | 1014AM | LAPGC |

36. 09.02.21 - 0000000 – ROBERT
37. 09.02.21 - 0249PM – ROBERT
38. 09.02.21 - 0405PM – LAPGC
39. 09.02.21 - 0410PM – ROBERT
40. 09.02.21 - 0412PM – ROBERT
41. 09.02.21 - 0604PM – LAPGC
42. 09.02.21 - 0611PM – LAPGC
43. 09.02.21 - 0638PM – ROBERT
44. 09.02.21 - 0639PM – LAPGC
45. 09.02.21 - 0641PM – ROBERT
46. 09.02.21 - 0649PM – ROBERT
47. 09.02.21 - 0652PM – ROBERT
48. 09.02.21 - 0705PM – LAPGC
49. 09.02.21 - 0739PM – ROBERT
50. 09.03.21 - 0915AM – ADM/SD
51. 09.07.21 - 0345PM – STAFF/SD
52. ATT: TO LAPGC, DYANPASTRANA, PC/SD
53. 09.16.21 - 0910PM – ROBERT
54. 09.17.21 - 0947PM – LAPCG
55. 09.17.21 - 1125AM – ROBERT
56. 09.17.21 - 0353PM – LAPGC
57. 09.17.21 - 0423PM - ROBERT

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #01

From: ROBERTS JUSTICE [mailto:robertsjustice@live.com]
Sent: Saturday, February 27, 2021 12:05 PM
To: Honorary Consulate of the Philippines <honcon@phconsulatesd.org>
Subject: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST

KABABAYAN,

I am a Filipino national based in Orange County, California. My mother died in December of 2020 requiring me to return to the Philippines to settle her estate. My Philippine passport was lost over a decade ago. Accordingly, I would like to request a reissuance, or in the alternative a permission for emergency travel. Since I am equidistant to the Los Angeles and San Diego consulate offices, it may seem better advised for me to conduct business with your office. At the very least, there may be less of a crowd to contend with.

My questions are: Are you able to accommodate my request? Also, what documents will your office require from me?

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #02

From: Philippine Consulate of San Diego <admin@phconsulatesd.org>

Mon 3/1/2021 10:23 AM

To: ROBERTS JUSTICE

Good morning,

Here at the Philippine Consulate of San Diego we do not have jurisdiction over passports, visas, nor dual citizenship. Our services include issuing emergency travel documents to Filipino citizens and the authentication of documents.

Please visit the Philippine Consulate of Los Angeles website for more information about passport, visas, or dual citizenship services. https://www.philippineconsulatela.org/

Please note that the San Diego Consulate does not have access to LA booking system,

Sincerely,
Kateryna Borge | Administrator
Philippine Consulate, San Diego County

701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@phconsulatesd.org

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #03

From: ROBERTS JUSTICE [mailto:robertsjustice@LIVE.COM]
Sent: Monday, March 1, 2021 11:12 AM
To: Philippine Consulate of San Diego <admin@phconsulatesd.org>
Subject: Re: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST

Sir/Madam,

Thank you for your reply.

As mentioned, my passport was lost some years ago. An application for a reissuance will require other documents that have likewise been lost or stolen. For instance, my birth certificate, school documentation and others were stolen during in a car burglary. Such documents, it appears, can only be obtained in the Philippines a task unlikely while I am here. Another element that magnifies my situation is the fact that I am homeless. All that raises this question: Can your office process my request as an emergency request for travel to the Philippines?

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #04

Philippine Consulate of San Diego <staff@phconsulatesd.org>
Tue 3/2/2021 10:50 AM
To: ROBERTS JUSTICE
Cc: Philippine Consulate of San Diego

Hi Robert,

Thank you for your response. We understand your inquiry about emergency travel.

The emergency travel document is allowed only for applicants who cannot be issued a Philippine passport and have emergency travel to the Philippines such as due to medical or legal reasons or death in the family. It can only be used one-way to the Philippines. For you to leave the Philippines, you will need to apply for a new passport.

We can assist in processing emergency travel documents for Filipino's and dual citizens. If you are a US citizen, kindly reach out to the Philippine Consulate of Los Angeles for an emergency travel application.

Also, kindly check this link for the requirements if you wish to apply for emergency travel: https://www.philippineconsulatela.org/consular-services-2/passp0rt/applicant-for-a-travel-document.

Please be advised that San Diego may request from you additional requirements that is not listed in the Los Angeles website.

We are temporarily accepting appointments for San Diego County residents only to avoid cross-contamination of the virus and in response to the rising number of Covid-19 cases. If you are outside San Diego County's jurisdiction, please contact the Philippine Consulate that has jurisdiction in your area.

We highly appreciate your patience and understanding.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #05

Request for issuance of travel document

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Tue 3/2/2021 2:18 PM
To: robertsjustice@live.com
Cc: Decastro PC Admin

Dear Mr. Lacambra,

This has reference to your request for issuance of a travel document from the Philippine Honorary Consulate in San Diego.

For the issuance of a travel document, the following are the requirements:

1. Birth Certificate or Copy of Philippine passport;
2. Valid ID;
3. Proof of Philippine Citizenship, i.e. resident card (green card) or dual citizenship documents;
4. Travel itinerary;
5. Proof of emergency in the Philippines, i.e. medical certificate or death certificate of an immediate family member that requires your immediate presence;
6. 4 pcs of 2x2 colored pictures with white background ;
7. USD30.00; and
8. Return envelope

Please take note that a travel document is a one way travel document in lieu of a Philippine passport, which is issued to a Filipino citizen only, and is valid only for thirty (30) days, hence, a document proving your Philippine citizenship and travel itinerary are mandatorily required.

Thank you

Assistance-to-Nationals Section
Philippine Consulate General in Los Angeles
3435 Wilshire Blvd, Suite 550
Los Angeles, CA 90010
Desk: +1 (213) 637-3024
Mobile: +1 (213) 587-0758
Website: philippineconsulatela.org
Follow us in Facebook: Philippine Consulate General in Los Angeles

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #06

Re: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST

From: ROBERTS JUSTICE
Tue 3/2/2021 11:06 AM
To: Philippine Consulate of San Diego



Madam,

As mentioned on my previous email, I am a Filipino national who is currently homeless in The OC. I could understand the limitations imposed by the pandemic. But surely, because of our inherent isolation as indigents, an exception could be made. I no longer have any of the documents required for a passport reissuance (i.e. birth certificate etc.). Hence, my application will be for a one-way pass to affect my return. I would appreciate it very much if your office can accommodate me, allowing for an interview there in San Diego rather than Los Angeles.

Attached is my mother's death certificate, signifying the reason for my return - that being to settle her estate in the Philippines.

Your assistance will be greatly appreciated.

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #07

From: ROBERTS JUSTICE <robertsjustice@LIVE.COM>
Sent: Wednesday, April 7, 2021 11:20 AM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Subject: Re: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST

Sir/Madam,

The Philippine Consulate requires emergency travelers to state his/her travel itinerary. Does that require show of an actual airline ticket? Or simply, stating the travel plans will suffice. COVID-19 restrictions make it difficult and unwise to purchase the tickets without permission to travel. Currently, travelers from the US are banned into the country. I am in the process of collecting all the documents that you require. Please advice.

Sincerely,
ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #08

From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Wed 4/7/2021 3:00 PM
To: You

Hi Robert,

Yes, it is required for you to show the purchased airline tickets (itinerary). And only foreign
passport holders are not allowed in the Philippines unless they can present a valid Visa.

In your case, since you are a Filipino citizen, you are allowed to travel, just secure all the
requirements for your travel document to be processed.

If you wish to submit your emergency travel application in San Diego, you would need to
book a flight originating from San Diego airport then connecting flight to Los Angeles (or any
US state only) to the Philippines. Please note that if you cannot find a direct flight, select a
connecting flight within US territory ONLY, to avoid the possibility of detention in other
countries.

If you opted to submit the travel application in Los Angeles, originating flight can be in Los
Angeles.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #09

From: ROBERTS JUSTICE <robertsjustice@LIVE.COM>
Sent: Wednesday, April 7, 2021 4:12 PM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Subject: Re: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST

Ms. Esteban,

In a previous email, I mentioned that I am homeless. My financial situation requires that I take advantage of certain perks available to me through American Airlines. They do not have a direct flight to the Philippines. The most direct flight will be from LAX to Hong Kong via American Airlines. Then, Hong Kong to Manila via Cebu Pacific Air. In deference to your instructions this requires me to see the Los Angeles Consulate, which I will do. However, for the purpose of inquiry, what will the Hong Kong authorities do when you say they can detain me.

I would appreciate your clarification.

Sincerely,
ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #10

RE: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST
From Philippine Consulate of San Diego <staff@phconsulatesd.org>
Wed 4/7/2021 5:48 PM
To: You
Hi Mr. Lacambra,

My apologies, but I am not the right person to ask about being detained in other countries. I am saying that since you opted to travel using emergency travel, its use might be limited within the US territory only. That is why we advise that you book connecting flights within US only. And I understand that you are homeless, I had already sought assistance and forwarded your previous email to the Assistance to Filipino National section in Los Angeles so they can assist you further.

As previously mentioned, we have limited services that we can offer here in San Diego.  My apologies for the confusion.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #11

REQUEST FOR APPOINTMENT

From: ROBERTS JUSTICE
Fri 5/28/2021 9:58 PM
To: ATN-Philippine Consulate General Los Angeles

Sir/Madam,

This is a request for an appointment. As mentioned, I am homeless and transportation challenged. Fortunately, I was able to secure a ride on the 5th of June to present my documents, if a spot is available. I would appreciate very much a quick response.

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #12

From: ROBERTS JUSTICE <robertsjustice@live.com>
Sent: Friday, July 16, 2021 1:46 PM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Subject: PASSPORT & RED RIBBON NOTARIZATION

Sir/Madam,

I am in need of executing certain documents for filing in the Regional Trial Court of Quezon. An attorney based in the Philippines informed me that the Philippine Consulate is able to notarize and Red Ribbon documents that have the same effect as an Apostile conformed document. Please advise whether that is correct. And also, whether it can be issued at the consulate in-person by appointment. What is needed from me?

My second question is: Can I apply for a new passport, but with special instructions for pick-up at the consulate? The reason is, I am homeless and without a reliable address. Surely, the consulate can make an exception considering my situation.

Awaiting your reply,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #13

RE: PASSPORT & RED RIBBON NOTARIZATION
Philippine Consulate of San Diego <staff@phconsulatesd.org>
Sat 7/17/2021 1:40 PM
To: ROBERTS JUSTICE

Thank you for your inquiry. We understand that you need assistance with document authentication. We have a temporary restriction and can book appointments for San Diego County residents only. If you are outside San Diego County's jurisdiction, please contact the nearest Philippine Consulate that has jurisdiction in your area.

We offer the following services: authentication/acknowledgment (i.e. red ribbon), mortuary certificates, and emergency travel documents for Filipino citizens and Dual citizens.
We are also fully-booked for July. Our earliest appointment is in August.
If you are from San Diego County and you wish to book an appointment, please provide the following:
      Address:
      Document type:
      Total number of documents for authentication:
      Total number of signers:

Note: This email do not confirm your appointment. If we received your response, we will send another email confirming the appointment. You should be present on the appointment day. We do not have jurisdiction over passports, visas, civil registration, or dual citizenship. Please contact or go to the Philippine Consulate of Los Angeles website at www.philippineconsulatela.org or https://www.philippineconsulatela.org/consular-services-2/passp0rt.

Thank you and we look forward to hear back from you and have a great day!

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101

Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #14

Re: PASSPORT & RED RIBBON NOTARIZATION

From: ROBERTS JUSTICE
Sat 7/17/2021 7:32 PM
To: Philippine Consulate of San Diego
Bcc: Linda Rose Pedero

Ms. Esteban,

I live in Orange County, equidistant between San Diego and Los Angeles. I would prefer an appointment at your office, if at all possible. I would like to arrange notarization and red ribbon for two sets of documents. In addition, I would like to secure emergency travel documents to the Philippines.

Having said that, may I request an appointment at your office?

As per your requirement:

      Address: I AM HOMELESS
      Mailing : 655 S. Main Street, Suite 200 – #160 Orange CA 92868
      Document type: Extra Judicial Agreement & Special Power of Attorney
      Total number of documents for authentication: 2 sets
      Total number of signers: 1

Awaiting your reply,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #15

From: ROBERTS JUSTICE <robertsjustice@LIVE.COM>
Sent: Saturday, July 17, 2021 7:33 PM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Subject: Re: PASSPORT & RED RIBBON NOTARIZATION

Ms. Esteban,

I live in Orange County, equidistant between San Diego and Los Angeles. I would prefer an appointment at your office, if at all possible. I would like to arrange notarization and red ribbon for two sets of documents. In addition, I would like to secure emergency travel documents to the Philippines.

Having said that, may I request an appointment at your office?

As per your requirement:

      Address: I AM HOMELESS
      Mailing : 655 S. Main Street, Suite 200 - #160 Orange CA 92868
      Document type: Extra Judicial Agreement & Special Power of Attorney
      Total number of documents for authentication: 2 sets
      Total number of signers: 1

Awaiting your reply,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #16


From Philippine Consulate of San Diego <staff@phconsulatesd.org>
Mon 7/19/2021 9:34 AM
To: You

Thank you for the information. I had set you the earliest appointment available on August 19 at 1:15 PM. I will send you a separate email with the appointment confirmation and another email detailing the emergency travel documents requirements.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #17

Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Mon 7/19/2021 9:45 AM
To: You

This email confirms your appointment for document authentication at the Philippine Consulate in San Diego on 19 August 2021, Thursday at 1:15 P.M. for 2 documents with 1 signer.

Further to our telephone conversations, please be reminded of the following rules and requirements:

On the day of your appointment:

- Please arrive no earlier than 5 minutes before your appointment.
- We will not be able to accommodate you if you were late for more than 10 minutes and you must call us again for a reschedule.
- Your temperature will be checked using a contactless thermometer.
- You will need access to get to the 17th floor. Please provide your name to the security at the front desk.
- We are in suite number 1745 (de Castro PC).
- We do not validate parking.
- Please wear your facemask at all times. We have a NO FACEMASK, NO ENTRY policy.

Regarding the authentication:

- Please have the document/s filled out before your appointment except for signature, date and location.
- If you are unable to fill out or unsure of the details, please consult an attorney as we do not provide legal advice and cannot help with filling out the form.
- No prior signing of the document/s, the date/location and signature should be left blank.
- Do not bring your document/s to any local notary service.
- If witnesses are required to sign your document/s, you are responsible to bring your witness/s to the appointment.
- Consulate staff will not sign your document/s as witness/s.
- Please call us and let us know if you need to bring witness/s.

- If you have less than 5 documents for authentication, you will get the documents on the same day.

If you have more than 4 documents:

- You have to bring a self-addressed envelope with sufficient postage stamps on it. (Please use USPS Priority Mail Express Envelope).
- If you are unsure of the number of stamps needed, you can bring your documents to the post office for assistance.
- Write your name and address on the "TO" portion of the envelope.
- DO NOT FORGET to take note of the tracking number of your envelope for easy tracing of your documents once we mail them.

Requirements:

- All signers must be present.
- All signers must present one valid ID.
- The ID has to be a Federal ID, state ID, driver's license, or passport. Only these IDs will be accepted.
- Bring photocopies of the IDs. Each copy of ID will be attached to every document/set that is authenticated. (Example: 4 documents = 4 photocopies of each signer's ID).
- Make sure that the name on your ID is exactly matching the name on your document otherwise, we cannot authenticate the document.
- If you are known by a different name in the Philippines please add the statement "also knowns as", on your document.
- If you have a middle name and it is listed on your ID and not on your document, you will need to redo the document to include your middle name.
- For women: If you are known in the Philippines by a different last name than your current one is, you need to also provide another ID that shows you are known by another name/last name.
- Bring your own pen.

For Payment:

- Each authentication is $25. Every set is considered an original and not a copy.
- We accept cash, money orders, cashier's checks, no personal checks (no personal bank account checks).
- If you choose to pay in cash, please bring the exact amount.
- With a money order or cashier's check it should be payable to the Philippine Consulate General of Los Angeles.

\*\*\* IMPORTANT REMINDERS \*\*\*

We will only process the number of documents that you initially booked. If you realize there are additional documents (including copies) for authentication, or you wish to reschedule or cancel your appointment please let us know by calling us at least 2 days before your appointment.

We can only accommodate 2 persons per household. Additional persons must wait in the lobby.

We do not authenticate marriage / death / birth certificates. If your certificate is issued by U.S.A please reach out to the Secretary of State in which the certificate originally came from. If your document is issued in the Philippines, the document should go to the D.F.A. also known as Department of Foreign Affairs in the Philippines for authentication.

Should you have questions please call our contact details below.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #18

Emergency travel documents requirements
From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Mon 7/19/2021 9:46 AM
To: You

Thank you for reaching out Philippine Consulate of San Diego.

We can assist in processing emergency travel documents. The emergency travel document is for Filipino/Dual citizens who cannot be issued a Philippine passport and have emergency travel to the Philippines due to medical or legal reasons or death in the family. It can only be used one-way to the Philippines.

Here are the requirements for an emergency travel application.

1. Must be Filipino or Dual citizen.
2. 4 copies of the filled out travel application form from this link.
   https://www.philippineconsulatela.org/wp-content/uploads/2015/11/TravelDocument.pdf
   NOTE: Leave the signature blank and the finger stamp blank.
3. 4 copies of expired Philippine Passport.
   In case of lost passport, present the following:
   Notarized Affidavit of Loss
   Birth Certificate or Marriage Certificate
   Documents as proof of Philippine Citizenship (ex. Philippine driver license, baptismal certificate, voter's affidavit Professional Regulatory Commission Card, etc.).
1. 4 copies of proof of citizenship.
2. 4 copies of flight ticket or itinerary with an originating flight from San Diego International Airport. The connecting flight should be within US territory only and does not go to another country. (Example: San Diego – Los Angeles – Manila).
3. 4 copies of proof of emergency. Stating the urgency/need for travel, and indicating your phone number and email address for ease of contact.
   Include here, original or photocopy of Proof of Urgency (e.g. Medical Certificate, Death Certificate, Subpoena Ad Testificandum, etc.)
4. 4 pieces passport photo aka 2x2 photos with white background taken at most six (6) months from date of applying for a travel document;
5. 4 copies of one valid form of ID such as a US passport. Driver license or State ID.
6. $30 processing fee. Cash payment only.
7. Scheduled appointment at the consulate for drop-off and pickup of the document.

Please call us at the number below to book your appointment.

Please note that we do not have jurisdiction over dual citizenship, passports, visas, or civil registration. Please contact or go to the Philippine Consulate of Los Angeles website at www.philippineconsulatela.org or https://www.philippineconsulatela.org/consular-services-2/dual-citizensh1p-ra-9225.

Thank you and have a great day.


Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #19

RE: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Fri 8/13/2021 9:32 AM
To: You

Please confirm that you have a valid ID to present on your appointment on August 19.

Either a drivers license or a State ID will do.

If one of these ID's are not available, we would have to cancel your appointment and forward your inquiry to Los Angeles Consulate for better assistance.

Your response is greatly appreciated.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #20

From: ROBERTS JUSTICE <robertsjustice@LIVE.COM>
Sent: Friday, August 13, 2021 11:49 AM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Subject: Re: Rules and requirements for confirmed appointment of Robert Lacambra at the
Philippine Consulate of San Diego.

Ms. Esteban,

Yes, I have a California ID card and a driver's license.
Is there anything else you need?

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #21

RE: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.
From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Fri 8/13/2021 12:18 PM
To: You

Thank you for the confirmation, Sir.

Regarding the emergency travel document, I am afraid we are unavailable to process this for you as it requires proof of citizenship like passport. And you had mentioned that your passport was stolen.

We had forwarded your emergency travel document request to Los Angeles. Someone form LA will reach out to you.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #22

Re: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: ROBERTS JUSTICE
Fri 8/13/2021 12:26 PM
To: Philippine Consulate of San Diego

No, the passport itself was not stolen. It was lost during an eviction of my storage facility. It was the other documentation that could provide me with a passport that got stolen (i.e. birth certificate, school records and other official documents). I will bring what I have with me to see if a way could be found to help me return home. I am quite literally stuck in the US. That is why I need the consulate's assistance because my situation is very unusual, my homelessness notwithstanding.

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #23

From: ROBERTS JUSTICE <robertsjustice@LIVE.COM>
Sent: Friday, August 13, 2021 2:08 PM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Subject: Re: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

Ms. Esteban,

I was able to obtain my birth certificate only because it can now be acquired online.
Here it is for you reference.
Most of the other documents for a passport can only be obtained once I am home.
That is understandable as most are stored in different locations.
An example is my school records, which will require proper identification.

I still need to find a way to return home.
Please help.

Sincerely,
ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #24

RE: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Mon 8/16/2021 10:43 AM
To: You
Cc: 'Kateryna Borge (kborge@decastropc.com)'

We regret to inform that we have to cancelled your appointment here in San Diego, as we cannot process your request for emergency travel document. This matter has been forwarded to the Philippine Consulate General in Los angeles and someone from LA will reach out to you.

We apologize for the inconvenience this has caused.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #25

Philippine Consulate of San Diego <admin@phconsulatesd.org>
Mon 8/16/2021 10:46 AM
To: You
Cc: Philippine Consulate of San Diego

Good morning Mr. Lacambra,

We are sorry to hear about your situation. Unfortunately, the Philippine Consulate of San Diego is an honorary consulate and does not have the same jurisdiction as Los Angeles Consulate, we do not have jurisdiction over passports, civil records and cannot provide legal advice, your appointment at San Diego is cancelled, however, your inquiry was relayed to Los Angeles Consulate and their staff will reach out to you with further assistance.

Sincerely,
Kateryna Borge | Administrator
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@phconsulatesd.org

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #26

Re: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: ROBERTS JUSTICE
Mon 8/16/2021 3:55 PM
To: Philippine Consulate of San Diego



Ms. Esteban,

I requested an appointment with the consulate for two reasons. First, to get Red Ribbon for two separate documents. Second, to obtain emergency travel documents. I am aware of the problems with securing the travel documents. However, there is no reason to cancel the appointment for my request for red ribbon conformance. I have already purchased the train ticket for my appointment.

I will still plan to travel to San Diego, unless you can explain to me with adequate satisfaction why you cannot provide me with the Red Ribbon request.

Sincerely,
ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #27

Fw: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: ROBERTS JUSTICE
Mon 8/16/2021 4:01 PM
To: kborge@decastropc.com;
 Philippine Consulate of San Diego



LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #28

RE: Rules and requirements for confirmed appointment of Robert Lacambra at the Philippine Consulate of San Diego.

From: Philippine Consulate of San Diego <admin@phconsulatesd.org>
Mon 8/16/2021 4:15 PM
To: You
Cc: Philippine Consulate of San Diego

Good afternoon Mr. Lacambra,

Your appointment at San Diego is cancelled as San Diego Consulate has limited jurisdiction, however, your inquiry was relayed to Los Angeles Consulate and their staff will reach out to you with further assistance. Your inquiry will be fully handled by Los Angeles Consulate and their Assistance to Nationals team. Our apologies for any inconvenience, the staff from Los Angeles Consulate will reach out to you shortly.

Sincerely,
Kateryna Borge | Administrator
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@phconsulatesd.org

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #29


IN RE: PROMISED APPOINTMENT

From: ROBERTS JUSTICE
Mon 8/30/2021 2:25 PM
To: Philippine Consulate of San Diego +2 others
Bcc: Linda Rose Pedero



00 - 20MOM, COR - Philippine Consulate re Appointment.pdf 1drv.ms
03 - RNL's Birth Certificate.pdf 1drv.ms
Show all 4 attachments

Sir/Madam,

Please find the following documents served to you herewith:
Correspondence - In re: Promised Appointment
Image of purchased tickets to/from SNA and SAN
Image of cancellation confirmation w/ charged fee
Copy of Robert Lacambra's Birth Certificate

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #30

Fw: IN RE: PROMISED APPOINTMENT

From: ROBERTS JUSTICE
Tue 8/31/2021 2:31 PM
To: ATN-Philippine Consulate General Los Angeles



00 - 20MOM, COR - Philippine Consulate re Appointment.pdf 1drv.ms
03 - RNL's Birth Certificate.pdf 1drv.ms
4 attachments

From: ROBERTS JUSTICE <robertsjustice@live.com>
Sent: Monday, August 30, 2021 2:25 PM
To: Philippine Consulate of San Diego <staff@phconsulatesd.org>; Philippine Consulate of San
Diego <admin@phconsulatesd.org>; admin.philcongenla@gmail.org
<admin.philcongenla@gmail.org>
Subject: IN RE: PROMISED APPOINTMENT

Sir/Madam,

Please find the following documents served to you herewith:
1.  Correspondence - In re: Promised Appointment
2.  Image of purchased tickets to/from SNA and SAN
3.  Image of cancellation confirmation w/ charged fee
4.  Copy of Robert Lacambra's Birth Certificate

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #31

2ND REQUEST FOR IMMEDIATE RESPONSE

From: ROBERTS JUSTICE
Wed 9/1/2021 4:39 PM
To: Philippine Consulate of San Diego +2 others



00 - 20MOM, COR - Philippine Consulate re Appointment 1.pdf 1drv.ms
03 - RNL's Birth Certificate 1.pdf 1drv.ms
Show all 4 attachments

Sir/Madam,

Please find the following documents served to you herewith:
1. Correspondence - In re: Promised Appointment
2. Image of purchased tickets to/from SNA and SAN
3. Image of cancellation confirmation w/ charged fee
4. Copy of Robert Lacambra's Birth Certificate

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #32

2ND REQUEST FOR IMMEDIATE RESPONSE

From: ROBERTS JUSTICE
Wed 9/1/2021 4:45 PM
To: ATN-Philippine Consulate General Los Angeles



00 - 20MOM, COR - Philippine Consulate re Appointment 2.pdf 1drv.ms
03 - RNL's Birth Certificate 2.pdf 1drv.ms
Show all 4 attachments

Sir/Madam,

Please find the following documents served to you herewith:
    1. Correspondence - In re: Promised Appointment
    2. Image of purchased tickets to/from SNA and SAN
    3. Image of cancellation confirmation w/ charged fee
    4. Copy of Robert Lacambra's Birth Certificate

Sincerely,


ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #33

Re: 2ND REQUEST FOR IMMEDIATE RESPONSE

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Thu 9/2/2021 9:25 AM
To: ROBERTS JUSTICE
Cc: Philippine Consulate of San Diego

Good day,

This is to acknowledge receipt of your email.

Further, this is my first time to know about your situation. If you are in need of a Travel Document (TD), kindly mail the following requirements to:

Philippine Consulate General
c/o Assistance to National Section
3435 Wilshire Blvd, Los Angeles, CA 90010

1. Copy of your Philippine Birth Certificate
2. Copy of your expired or lost PHL passport
3. Proof of Philippine Citizenship (i.e. resident card, Dual Citizenship documents)
4. Copy of your Travel Itinerary
5. 4 pcs 2x2 colored pictures with white background
6. Postal Money Order amounting to $25.00 payable to the Philippine Consulate General
7. Return envelope
8. Short request letter indicating your emergency and your mobile contact number

Kindly accomplished the attached TD Application Form and mailed it together with the above-mentioned requirements.

Please take note that TD is a one way travel document to the Philippines and is valid only for 30 days.  Hence, your application for TD should be mailed to the Consulate at least 3 weeks prior to your flight to the Philippines.

Thank you.

Assistance-to-Nationals Section
Philippine Consulate General in Los Angeles
3435 Wilshire Blvd, Suite 550

Los Angeles, CA 90010
Desk: +1 (213) 637-3024
Mobile: +1 (213) 587-0758
Website:  philippineconsulatela.org

Follow us in Facebook: Philippine Consulate General in Los Angeles

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #34

On Thu, Sep 2, 2021 at 9:44 AM MARIA ALNEE GAMBLE <alnee.gamble@dfa.gov.ph> wrote:

Hazel, please find out from the Consulate whether they actually forwarded the request of Mr. Lacambra to us. Based on his email, he is in need of an apostille for his document/s and an ETD. Let us properly advise our clients about the procedures for document authentication as well as on setting  appointments for consular documents with us and with any HonCon office under our jurisdiction for us to avoid complaints .

Thank you.

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #35

Re: 2ND REQUEST FOR IMMEDIATE RESPONSE

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Thu 9/2/2021 10:14 AM
To:  staff@phconsulatesd.org;
 Philippine Consulate of San Diego
Cc: robertsjustice@live.com

Good day,

This has reference to the case of Mr. Robert Lacambra on his application for Apostille and
Emergency Travel Document (ETD).

In one of your correspondence, you mentioned that his application for ETD has been referred
to the Philippine Consulate General in Los Angeles. May I request the details of your referral,
i.e. date of referral and what section did you refer to the application?

Immediate response on this matter would be highly appreciated.

Thank you

Assistance-to-Nationals Section
Philippine Consulate General in Los Angeles
3435 Wilshire Blvd, Suite 550
Los Angeles, CA 90010
Desk: +1 (213) 637-3024
Mobile: +1 (213) 587-0758
Website:  philippineconsulatela.org

Follow us in Facebook: Philippine Consulate General in Los Angeles

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #36

RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ROBERTS JUSTICE
To: ATN-Philippine Consulate General Los Angeles

Sir/Madam,

The correspondence and attached emails I sent you specifically requested an appointment for "Red Ribbon" conformance of two documents relating to a case on docket at the Regional Trial Court in Quezon Province. That is of paramount importance and for which an appointment at your office is currently required. If you can return my email with an appointment date and time, I would appreciate it.

As for the "Emergency Travel Document," I could bring the documents you specified below when I meet with a consulate officer.

Thank you very much for your assistance.

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #37

RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ROBERTS JUSTICE
Thu 9/2/2021 2:49 PM
To: ATN–Philippine Consulate General Los Angeles

Sir/Madam,

The correspondence and attached emails I sent you specifically requested an appointment for "Red Ribbon" conformance of two documents relating to a case on docket at the Regional Trial Court in Quezon Province. That is of paramount importance and for which an appointment at your office is currently required. If you can return my email with an appointment date and time, I would appreciate it.

As for the "Emergency Travel Document," I could bring the documents you specified below when I meet with a consulate officer.

Thank you very much for your assistance.

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #38

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Thu 9/2/2021 4:05 PM
To: ROBERTS JUSTICE



Your schedule for Notarial Services will be on Tuesday, 07 Sep 2021 at 10 am.

Just go to the Consulate and give your name to our receptionist.  Should the receptionist
cannot find your name in the list, you may look for me,Hazel Mendoza (ATN Officer).

Thank you

Assistance-to-Nationals Section
Philippine Consulate General in Los Angeles
3435 Wilshire Blvd, Suite 550
Los Angeles, CA 90010
Desk: +1 (213) 637-3024
Mobile: +1 (213) 587-0758
Website:  philippineconsulatela.org

Follow us in Facebook: Philippine Consulate General in Los Angeles

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #39

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ROBERTS JUSTICE
Thu 9/2/2021 4:10 PM
To: ATN–Philippine Consulate General Los Angeles
Bcc: Linda Rose Pedero

Ms. Mendoza,

I must to take the train from Orange County.
Could you please set an appointment for early afternoon to make sure I arrive there on time?
I would very much appreciate it.

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #40

On Thu, Sep 2, 2021 at 4:12 PM ROBERTS JUSTICE <robertsjustice@live.com> wrote:

Ms. Mendoza,

I must to take the train from Orange County.
Could you please set an appointment for early afternoon to make sure I arrive there on time?
I would very much appreciate it.

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #41

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Sent: Thursday, September 2, 2021 6:04 PM
To: ROBERTS JUSTICE <robertsjustice@live.com>
Subject: Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

Noted on this.

can you email me the copy of the document that needs to be notarized so I can assess if we accept such document?

thanks

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #42

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Thu 9/2/2021 6:11 PM
To: ROBERTS JUSTICE

Noted on this.

can you email me the copy of the document that needs to be notarized so I can assess if we accept such document?

thanks

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #43

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ROBERTS JUSTICE
Thu 9/2/2021 6:38 PM
To: ATN-Philippine Consulate General Los Angeles
20MOM, GQ - EJS Revised.pdf 100 KB
20MOM, GQ - Power of Attorney.pdf 56 KB
Show all 2 attachments (156 KB) Download all Save all to OneDrive

Officer Mendoza,

Here are the two documents that need your Red Ribbon notarization.
They are to be filed in the Regional Trial Court, Quezon Province.

Awaiting your reply on an appointment around 1:30PM for the 7th of September, if possible

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #44

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

Translate message to: English | Never translate from: Filipino

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Thu 9/2/2021 7:05 PM
To: ROBERTS JUSTICE

yes, pwede po basta dumating kayo ng before 3 pm.

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #45

On Thu, Sep 2, 2021 at 6:41 PM ROBERTS JUSTICE <robertsjustice@live.com> wrote:

Officer Mendoza,

Here are the two documents that need your Red Ribbon notarization.
They are to be filed in the Regional Trial Court, Quezon Province.

Awaiting your reply on an appointment around 1:30PM for the 7th of September, if possible

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #46

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

Translate message to: English | Never translate from: Filipino

From: ROBERTS JUSTICE
Thu 9/2/2021 6:49 PM
To: ATN-Philippine Consulate General Los Angeles

Salamat, po.
Paki confirm kung pwede ilipat ang appointment ko sa 1:30PM ng September 7.
Ang appointment ko ay kasalukuyang nakalagda ng 10:00AM.
Kailangan ko pong sumakay ng train galing sa Orange County at baka magipit at hindi makaabot.
Paki email nalang ninyo ako.
Salamat sa inyong tulong.

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #47

On Thu, Sep 2, 2021 at 6:52 PM ROBERTS JUSTICE <robertsjustice@live.com> wrote:

Salamat, po.

Paki confirm kung pwede ilipat ang appointment ko sa 1:30PM ng September 7.
Ang appointment ko ay kasalukuyang nakalagda ng 10:00AM.
Kailangan ko pong sumakay ng train galing sa Orange County at baka magipit at hindi makaabot.
Paki email nalang ninyo ako.

Salamat sa inyong tulong.

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #48

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

Translate message to: English | Never translate from: Filipino

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Thu 9/2/2021 7:05 PM
To:  ROBERTS JUSTICE

yes, pwede po basta dumating kayo ng before 3 pm.

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #49

Re: RED RIBBON & EMERGENCY TRAVEL DOCUMENT

From: ROBERTS JUSTICE
Thu 9/2/2021 7:39 PM
To: ATN-Philippine Consulate General Los Angeles
Bcc: Linda Rose Pedero



IMG_5485.JPG1drv.ms



2 attachments

Maraming salamat, po.
Luluwas po ako ng maaga at tutuloy ako agad sa opisina ninyo.
Kung ano mang oras akong makarating, magpapakilala nalang ako sa security guard.

Matanong ko po sa inyo.
Dahil kailangan ko pong makabalik sa Pilipina upang maayos ko ang estate ng aking namatay na ina.
Iyong unang pasaporte ko ay nawala nang na-forclose ang storage locker ko.

Tinignan ko ang listahan ng mga kailangan upang makakuha ng bagong (replacement) pasaporte.
Kamalasan naman, iyong mga tamang dokumento na pwedeng maipakita sa inyo nanakaw sa isang burglary.

Ito po ang parte ng police report nakasilid dito sa email.

Nakakuha na po ako ng birth certificate dahil pwedeng makuha online.
Nakita po ninyo iyon sa nakalipas na email sa inyo.
Ngunit and baptismal ko at high school records ko ay hindi ko makuha.
Sa kasalukuyan ay homeless ako at wala pang trabaho.
Sa madaling salita, wala po akong pondo para makakuha nung iba pang dokumento na nasa Pilipinas.
Kung maipakita ko po ang police report at mapatunayan ko sa aking pananalita na ako'y Pilipino,
pwedo ho ba ninyo akong tulungang makabalik sa Pilipinas?


Ang inyong linkod,
ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #50

RE: 2ND REQUEST FOR IMMEDIATE RESPONSE

From: Philippine Consulate of San Diego <admin@phconsulatesd.org>
Fri 9/3/2021 9:15 AM
To: ATN-Philippine Consulate General Los Angeles +1 other
Cc: robertsjustice@live.com

Good morning,

HonCon forwarded the request to ConGen and was informed that Mr. Lacambra's request will
be handled by the Assistance to Nationals team,

Sincerely,
Kateryna Borge | Administrator
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@phconsulatesd.org

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #51

RE: 2ND REQUEST FOR IMMEDIATE RESPONSE

From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
Tue 9/7/2021 3:45 PM
To: ATN-Philippine Consulate General Los Angeles
Cc: robertsjustice@live.com; Philippine Consulate of San Diego

RE: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST
601 KB

Apologies for the delayed response. Please refer to the attached email.

Thank you so much for your assistance with this.


Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County



701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #52

RE: PASSPORT INQUIRY OR EMERGENCY TRAVEL REQUEST

Some content in this message has been blocked because the sender isn't in your Safe senders list. Show blocked content
Some content in this message has been blocked because the sender isn't in your Safe senders list.

From: Philippine Consulate of San Diego <staff@phconsulatesd.org>
To: lapcg.atn@gmail.com
Cc: dyanmiranda.pastrana (dyanmiranda.pastrana@gmail.com)'; Philippine Consulate of San Diego



Hi Ms. Hazel,

Good afternoon. Are you able to assist this constituent who is unable to provide supporting documents for his emergency travel request. I had attached his mother's death certificate for your perusal. Or if you can direct me to the right department please. My apologies for the added work.

Sincerely,
Ria Esteban | Staff Member
Philippine Consulate, San Diego County

701 B Street, Suite 1745
San Diego, CA 92101
Phone: (619) 241-2114
Fax: (619) 702-9401
admin@decastropc.com
www.decastropc.com

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #53

PRE-LITIGATION MEET & CONFER

ROBERTS JUSTICE
Thu 9/16/2021 9:10 PM

To:  Honcon@phconsulatesd.org;  Philippine Consulate of San Diego +4 others
Bcc: Linda Rose Pedero
21PHI, COR - Pre-Litigation Meet & Confer.pdf 611 KB
21PHI, DEC - Adetoro v. King Abdullah Academy.pdf 1 MB
Show all 2 attachments (2 MB) Download all Save all to OneDrive

Sir/Madam,

Please find the following documents served to you herewith:
   1.  Pre-litigation Meet & Confer Letter
   2.  USDC Decision - Adetoro v. King Abdullah Academy

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #54

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Sent: Friday, September 17, 2021 9:47 AM
To: ROBERTS JUSTICE <robertsjustice@live.com>
Cc: Honcon@phconsulatesd.org <Honcon@phconsulatesd.org>; Philippine Consulate of San Diego <admin@phconsulatesd.org>; Kateryna Borge (kborge@decastropc.com) <kborge@decastropc.com>; Philippine Consulate of San Diego <staff@phconsulatesd.org>; admin.philcongenla@gmail.org <admin.philcongenla@gmail.org>
Subject: Re: PRE-LITIGATION MEET & CONFER

Good day,

This is to acknowledge receipt of your email dated 16 Sep 2021 on Pre-Litigation Meet and Confer.

Per your attached document, the lawsuit is against King Abdullah Academy, a Saudi Arabian international school in Virginia, and the Saudi Embassy in the US. The court's instruction is for the plaintiffs to comply with the service requirement to theForeign Ministry of Saudi Arabia.

If you are one of the teachers involved in the case, the service requirement should be addressed to the Saudi Foreign Ministry, as the diplomatic mission involved in the case is the Saudi Embassy, not the Philippine Embassy. Also, if any of the plaintiffs is a Filipino, then they should be advised to visit the Philippine Embassy in Washington, D.C., to determine whether assistance can be extended to him/her in this case.

If the documents are related to this case, the Philippine Consulate cannot notarize said documents.  You may have your documents Apostilled by the Secretary of State where the documents were executed to be accepted by the Royal Embassy of the Kingdom of Saudi Arabia in the US.

Thank you and kind regards
Assistance-to-Nationals Section
Philippine Consulate General in Los Angeles
3435 Wilshire Blvd, Suite 550
Los Angeles, CA 90010
Desk: +1 (213) 637-3024
Mobile: +1 (213) 587-0758
Website:  philippineconsulatela.org

Follow us in Facebook: Philippine Consulate General in Los Angeles

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #55

Re: PRE-LITIGATION MEET & CONFER

ROBERTS JUSTICE
Fri 9/17/2021 11:25 AM
To: ATN-Philippine Consulate General Los Angeles
Cc: Honcon@phconsulatesd.org +4 others
Bcc: Linda Rose Pedero

Sir/Madam,

Your reply only demonstrates the continued misunderstanding we experience that may have led to my grievance.

The case law "Adetoro v. King Abdullah Academy" was attached to signify the unique service of process requirements when suing a foreign sovereign. My letter sought to arrange service of the complaint and summons here in the United States, presumably by serving it to the consulate offices, instead of serving it to the Secretary of Foreign Affairs office in Manila. The lawsuit will be entitled Lacambra v. Republic of the Philippines, invoking an array of federal and state statutes for deprivations experienced in the course of my quest for a replacement passport. It will be lodged in the US District Court Central District of California on Monday the 20th of September.

Let me repeat my request in this way: May I serve the complaint and summons to either the Los Angeles or San Diego consulate offices via electronic email?

Sincerely,

ROBERT LACAMBRA

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #56

From: ATN-Philippine Consulate General Los Angeles <lapcg.atn@gmail.com>
Sent: Friday, September 17, 2021 3:53 PM
To: ROBERTS JUSTICE <robertsjustice@live.com>
Subject: Re: PRE-LITIGATION MEET & CONFER

Dear Mr. Lacambra,

With reference to your previous email, we wish to inform you that as per our records, the Consulate General had provided you with advice and guidance concerning passport renewal as well as travel document issuance in view of your intention to return to the Philippines and your declaration that your passport had already expired. The Consulate had likewise accommodated you and provided you with an appointment for the consular service you require.

As to your intention to file a suit against the Consulate General regarding our alleged failure to attend to your passport renewal, may we advise you instead to review the information provided to you regarding our passport renewal process and to comply with these requirements in order for you to secure a new passport.

Thank you.
Assistance-to-Nationals Section
Philippine Consulate General in Los Angeles
3435 Wilshire Blvd, Suite 550
Los Angeles, CA 90010
Desk: +1 (213) 637-3024
Mobile: +1 (213) 587-0758
Website:  philippineconsulatela.org

Follow us in Facebook: Philippine Consulate General in Los Angeles

LACAMBRA V. REPUBLIC OF THE PHILIPPINES
EMAIL #57

From: ROBERTS JUSTICE
Fri 9/17/2021 4:23 PM
To: ATN-Philippine Consulate General Los Angeles
Cc: Honcon@phconsulatesd.org +9 others
Bcc: Linda Rose Pedero

Sir/Madam,

Your recent reply is just another example of the stonewalling that you have used to deprive me of my right to return to the land of my birth.

Just as you suggested that I consult the list of documents for a replacement passport (all of which I have already presented to your colleague on the 19th), I will suggest that it is time that you refer this case to your legal department. Without trying to impugn your expertise, you are clearly out of your depth.

I will take your reply as an answer in the negative and request the US District Court to serve the lawsuit package directly to the Secretary of Foreign Affairs in Manila.

Sincerely,

ROBERT LACAMBRA

# EXHIBIT D

← **Fw: IN RE: PROMISED APPOINTMENT**

**ROBERTS JUSTICE**
Tue 8/31/2021 2:31 PM
To: ATN-Philippine Consulate General Los Angeles

 

 00 - 20MOM, CDR - Phil... ⌄     03 - RNL's Birth Certificat... ⌄
    1drv.ms                         1drv.ms

4 attachments

---

**From:** ROBERTS JUSTICE <robertsjustice@live.com>
**Sent:** Monday, August 30, 2021 2:25 PM
**To:** Philippine Consulate of San Diego <staff@phconsulatesd.org>; Philippine Consulate of San Diego <admin@phconsulatesd.org>; admin.philcongenla@gmail.org <admin.philcongenla@gmail.org>
**Subject:** IN RE: PROMISED APPOINTMENT

*Sir/Madam,*

*Please find the following documents served to you herewith:*

1. *Correspondence - In re: Promised Appointment*
2. *Image of purchased tickets to/from SNA and SAN*
3. *Image of cancellation confirmation w/ charged fee*
4. *Copy of Robert Lacambra's Birth Certificate*

*Sincerely,*

*ROBERT LACAMBRA*

**ROBERT LACAMBRA**
INDIGENT LITIGATOR
NO CURRENT ADDRESS
robertsjustice@live.com

August 30, 2021

Philippine Consulate General
3435 Wilshire Blvd Ste 550
Los Angeles, CA 90010 U.S.A.

VIA EMAIL TRANSMISSION TO:
staff@phconsulatesd.org
admin@phconsulatesd.org
admin.philcongenla@gmail.org

Sir/Madam,

This letter responds to correspondence from your office cancelling my appointment with the consulate office in San Diego. The reason stated was that the San Diego office was not authorized to process passport applications. In the email, your office stated that my information is being forwarded to the consulate office in Los Angeles who will in turn set an appointment for me. The correspondence was received on the 16th of August, 2021. As of today, no such communication from the Los Angeles consulate office pertaining to an appointment or any other matter has been received.

The appointment with the San Diego office was made for two reasons: First, to obtain Red Ribbon conformance for documents to be filed at the Regional Trial Court, Quezon Province. Second, to obtain emergency travel documents for my return to the Philippines. Previous communications with the San Diego office made it clear that the reason for my trip was to settle my mom's estate in the Philippines. She died in December of 2020.

Having said that, the appointment cancellation cannot be viewed as anything less than irregular as a Philippine passport was not being sought, only emergency travel documents. Based on a review of your website, a request for Red Ribbon conformance and emergency travel documents are well within the scope of the services offered by the San Diego consulate office. This abrupt and unilateral cancellation of my appointment has caused undue harm including, but is not limited to:

1. Incurring cancellation fees for train reservations amounting to $14.67
2. Delaying a pending real property transaction in the Philippines.
3. Delaying the final resolution of my decedent mother's estate.
4. Obstructing judicial proceedings at the Regional Trial Court in Quezon Province.
5. Denying the return of a Philippine national back to his own country.

The highly undesirable situation your actions have caused cannot be overstated, as none of the services requested are available anywhere else without considerable cost and inconvenience. This is particularly true for an individual who, like myself, is homeless and is seeking a way back to the country of his birth.

For the time being, we shall dispense with the customary threats of legal action that situations like these usually warrant. However, having explained the circumstance that we find ourselves, I trust that the consulate will treat this with all seriousness and accord it with all possible dispatch.

Sincerely,

/s/ Robert Lacambra

ROBERT LACAMBRA


ATTACHMENTS:

Train tickets to/from SNA to SAN

Cancellation of tickets w/ cancellation fee

Birth Certificate of Robert Lacambra



Riders    AMTRAK    Baggage

**REFUND RECEIPT**

02 TKTS RFND/ 2289139545617

2289139545625

| ORIG AMT PAID | 58.70 |
| USED PORTION | 0.00 |
| FORFEITED AMOUNT | 0.00 |
| EXC VOUCHER | Date 0.00 |
| CANCEL FEE | 14.67 |
| CASH REFUND | 44.03 |

Form of Payment

Rail Fare    Accom Charge

Fare Plans    Total

**AGENT: 9139**    No. of

**17AUG21/1029A SNA**

PASSENGER RECEIPT



Municipal Form No. 102 - (Revised Dec. 1, 1958)

(TO BE ACCOMPLISHED IN DUPLICATE)

REPUBLIC OF THE PHILIPPINES

# CERTIFICATE OF LIVE BIRTH

(FILL OUT COMPLETELY, ACCURATELY, LEGIBLY IN INK OR TYPEWRITER)

Register Number:

Province:
City or Municipality: **Manila**

(a) Civil Registrar-General No.
(b) Local Civil Registrar No. **518 (165)**

| | |
|---|---|
| 1. PLACE OF BIRTH | 2. USUAL RESIDENCE OF MOTHER (Where does mother live?) |
| a. PROVINCE | a. PROVINCE **Rizal** |
| b. CITY OR MUNICIPALITY **1655 M. Adriatico, Malate, Manila** | b. CITY OR MUNICIPALITY **San Dionisio, Parañaque** |
| c. NAME OF HOSPITAL OR INSTITUTION (If not in hospital, give street address) **Clinica de la Rosa** | c. NUMBER AND STREET **16 Road Extra, Fourth Estate Subd.** |
| d. IS PLACE OF BIRTH INSIDE CITY LIMITS? Yes ☒ No ☐ | d. IS RESIDENCE INSIDE CITY LIMITS? Yes ☐ No ☒ | e. IS RESIDENCE ON A FARM? Yes ☐ No ☐ |

**CHILD**

5. NAME (Type or print) First **Roberto Nelson** Middle **Lagdamco** Last **Lacambra**

| | | | |
|---|---|---|---|
| 4. SEX **male** | 5a. THIS BIRTH SINGLE ☒ TWIN ☐ TRIPLET ☐ | 5b. IF TWIN OR TRIPLET, WAS CHILD 1ST ☐ 2ND ☐ 3RD ☐ | 6. DATE OF BIRTH Month **Sept** Day **25** Year **1965** |

**FATHER**

| 7. NAME First **Nelson** Middle **Agcaoili** Last **Lacambra** | 8. RELIGION **R. Catholic** | 8a. NATIONALITY **Filipino** | 8b. RACE **brown** |
|---|---|---|---|
| 9. AGE (At time of this birth) **29** Years | 10. BIRTHPLACE **Baguio City, Mt. Province** | 11a. USUAL OCCUPATION **Advertising Executive** | 11b. KIND OF BUSINESS OR INDUSTRY **Nation Ad Philippines** |

**MOTHER**

| 12. MAIDEN NAME First **Mada** Middle **Kirkwood** Last **Lagdamco** | 12a. RELIGION **R. Catholic** | 12b. NATIONALITY **Filipino** | 12c. RACE **brown** |
|---|---|---|---|
| 14. AGE (At time of this birth) **27** Years | 15. BIRTHPLACE **Quiapo, Manila** | 16. PREVIOUS DELIVERIES TO MOTHER (Do not include this birth) | |

16. PREVIOUS DELIVERIES TO MOTHER

| a. How many children are now living? **0** | b. How many other children were born alive but are now dead? **0** | c. How many fetal deaths (fetuses born dead any time after conception)? **0** |
|---|---|---|

17. INFORMANT'S SIGNATURE: _(signed)_
a. NAME IN PRINT: **NELSON A. Lacambra**
b. ADDRESS: **16 Rd. Extra 4th Estate Subd. Br. San Dionisio**

18. MOTHER'S MAILING ADDRESS: **same as above**

19. ATTENDANT AT BIRTH

I hereby certify that I attended the birth of this child who was born alive at **7:15** o'clock **A.** M. on the date above indicated.
a. SIGNATURE: _(signed)_
b. NAME IN PRINT: **Ester R. de la Rosa, M.D.**
c. ADDRESS: **Clinica de la Rosa**

d. DATE SIGNED BY ATTENDANT AT BIRTH: **September 27, 1965**

TITLE OF ATTENDANT AT BIRTH:
☒ M. D.   ☐ MIDWIFE
☐ NURSE   ☐ OTHERS (Specify)

20. RECEIVED IN THE OFFICE OF THE LOCAL CIVIL REGISTRAR BY:
a. SIGNATURE:
b. NAME IN PRINT:
c. TITLE OR POSITION:
d. DATE: **SEP 28 1965**

21. a. GIVEN NAME ADDED FROM SUPPLEMENTAL REPORT:

b. DATE WHEN GIVEN NAME WAS SUPPLIED:

0320

| 22a. LENGTH OF PREGNANCY **37** COMPLETED WEEKS | 22b. WEIGHT AT BIRTH **6 1/2** Lbs. **0** Oz. | 23. LEGITIMATE ☒ YES ☐ NO |
|---|---|---|

24. DATE AND PLACE OF MARRIAGE OF PARENTS (For legitimate birth) **June 18, 1964 Pandacan, Manila**
(Month) (Date) (Year)
City or Municipality _____ Province _____

25. THIS CERTIFICATE IS FREE FROM ERASURE
SIGNATURE: _(signed)_
NAME IN PRINT: **Salvador Sta. Maria**
TITLE OR POSITION: **Record Clerk**
DATE: **Sept. 27, 1965**

19—239   (SPACE FOR MEDICAL AND HEALTH ITEMS WITH SPECIAL PURPOSES)



07754-D6-991MCC-02529-BI002

BEST POSSIBLE IMAGE

T08007754991025290325202100

U0700161037

BReN
[03910-A65SR3F-1]

Documentary
Stamp Tax Paid

CLAIRE DENNIS S. MAPA, Ph. D.
National Statistician and Civil Registrar General
Philippine Statistics Authority

# EXHIBIT E

← 2ND REQUEST FOR IMMEDIATE RESPONSE

**ROBERTS JUSTICE**
Wed 9/1/2021 4:39 PM

To: Philippine Consulate of San Diego; Philippine Consulate of San Diego; admin.philcongenla@gmail.com

 

 00 - 20MOM, COR - Phili...  ⌄      03 - RNL's Birth Certificat...  ⌄
1drv.ms                                              1drv.ms

4 attachments

*Sir/Madam,*

*Please find the following documents served to you herewith:*

1. *Correspondence - In re: Promised Appointment*
2. *Image of purchased tickets to/from SNA and SAN*
3. *Image of cancellation confirmation w/ charged fee*
4. *Copy of Robert Lacambra's Birth Certificate*

*Sincerely,*

*ROBERT LACAMBRA*

## ROBERT LACAMBRA
INDIGENT LITIGATOR
NO CURRENT ADDRESS
robertsjustice@live.com

August 30, 2021

Philippine Consulate General
3435 Wilshire Blvd Ste 550
Los Angeles, CA 90010 U.S.A.

VIA EMAIL TRANSMISSION TO:
staff@phconsulatesd.org
admin@phconsulatesd.org
admin.philcongenla@gmail.org

Sir/Madam,

This letter responds to correspondence from your office cancelling my appointment with the consulate office in San Diego. The reason stated was that the San Diego office was not authorized to process passport applications. In the email, your office stated that my information is being forwarded to the consulate office in Los Angeles who will in turn set an appointment for me. The correspondence was received on the 16th of August, 2021. As of today, no such communication from the Los Angeles consulate office pertaining to an appointment or any other matter has been received.

The appointment with the San Diego office was made for two reasons: First, to obtain Red Ribbon conformance for documents to be filed at the Regional Trial Court, Quezon Province. Second, to obtain emergency travel documents for my return to the Philippines. Previous communications with the San Diego office made it clear that the reason for my trip was to settle my mom's estate in the Philippines. She died in December of 2020.

Having said that, the appointment cancellation cannot be viewed as anything less than irregular as a Philippine passport was not being sought, only emergency travel documents. Based on a review of your website, a request for Red Ribbon conformance and emergency travel documents are well within the scope of the services offered by the San Diego consulate office. This abrupt and unilateral cancellation of my appointment has caused undue harm including, but is not limited to:

1. Incurring cancellation fees for train reservations amounting to $14.67
2. Delaying a pending real property transaction in the Philippines.
3. Delaying the final resolution of my decedent mother's estate.
4. Obstructing judicial proceedings at the Regional Trial Court in Quezon Province.
5. Denying the return of a Philippine national back to his own country.

The highly undesirable situation your actions have caused cannot be overstated, as none of the services requested are available anywhere else without considerable cost and inconvenience. This is particularly true for an individual who, like myself, is homeless and is seeking a way back to the country of his birth.

For the time being, we shall dispense with the customary threats of legal action that situations like these usually warrant. However, having explained the circumstance that we find ourselves, I trust that the consulate will treat this with all seriousness and accord it with all possible dispatch.

Sincerely,

/s/ Robert Lacambra

ROBERT LACAMBRA


ATTACHMENTS:

Train tickets to/from SNA to SAN

Cancellation of tickets w/ cancellation fee

Birth Certificate of Robert Lacambra



Riders ✈AMTRAK Baggage

**REFUND RECEIPT**

N02 of TKTS RFND/ 2289139545617
2289139545625

ORIG AMT PAID        58.70
USED PORTION          0.00
FORFEITED AMOUNT      0.00
EXC VOUCHER           0.00
CANCEL FEE           14.67
CASH REFUND          44.03

Form of Payment

Rail Fare                    Accom.Charge

Fare Plans                   Total

**AGENT:    9139**        No.   of
17AUG21/1029A **SNA**

PASSENGER RECEIPT



MUNICIPAL FORM No. 102 (Revised Dec. 1, 1968)

**REPUBLIC OF THE PHILIPPINES**

(TO BE ACCOMPLISHED IN DUPLICATE)

## CERTIFICATE OF LIVE BIRTH

(FILL OUT COMPLETELY, ACCURATELY, LEGIBLY IN INK OR TYPEWRITTEN)

**Register Number:**

Province: _____

City or Municipality: **Manila**

(a) Civil Registrar-General No. _____

(b) Local Civil Registrar No. **518** **165**

| CHILD | | | |
|---|---|---|---|
| 1. PLACE OF BIRTH a. PROVINCE | | 2. USUAL RESIDENCE OF MOTHER (Where does mother live?) a. PROVINCE **Rizal** | |
| b. CITY OR MUNICIPALITY **1635 M. Adriatico, Malate, Manila** | | b. CITY OR MUNICIPALITY **San Dionisio, Parañaque** | |
| c. NAME OF HOSPITAL OR INSTITUTION (If not in hospital, give street address) **Clinica de la Rosa** | | c. NUMBER AND STREET **16 Road Extra, Fourth Estate Subd.** | |
| d. IS PLACE OF BIRTH INSIDE CITY LIMITS? YES ☒ NO ☐ | | d. IS RESIDENCE INSIDE CITY LIMITS? YES ☐ NO ☒ | e. IS RESIDENCE ON A FARM? YES ☐ NO ☐ |

| CHILD | 3. NAME (Type or print) First **Roberto Nelson** Middle **Lagdameo** Last **Lacambra** | | | |
|---|---|---|---|---|
| 4. SEX **male** | 5a. THIS BIRTH SINGLE ☒ TWIN ☐ TRIPLET ☐ | 5b. IF TWIN OR TRIPLET, WAS CHILD 1ST ☐ 2ND ☐ 3RD ☐ | 6. DATE OF BIRTH Month **Sept.** Day **25**, Year **1965** | |

| FATHER | | | | |
|---|---|---|---|---|
| 7. NAME First **Nelson** Middle **Agoncillo** Last **Lacambra** | | 8. RELIGION **R. Catholic** | 8a. NATIONALITY **Filipino** | 8b. RACE **Brown** |
| 9. AGE (At time of this birth) **29** Years | 10. BIRTHPLACE **Baguio City, Mt. Province** | 11a. USUAL OCCUPATION **Advertising Executive** | 11b. KIND OF BUSINESS OR INDUSTRY **Nation Ad Philippines** | |

| MOTHER | | | | |
|---|---|---|---|---|
| 12. MAIDEN NAME First **Linda** Middle **Kirkwood** Last **Lagdameo** | | 13. RELIGION **R. Catholic** | 13a. NATIONALITY **Filipino** | 13b. RACE **Brown** |
| 14. AGE (At time of this birth) **27** Years | 15. BIRTHPLACE **Quiapo, Manila** | 16. PREVIOUS DELIVERIES TO MOTHER (Do not include this birth) | | |
| | | a. How many children are now living? **0** | b. How many other children were born alive but are now dead? **0** | c. How many fetal deaths (fetuses born dead any time after conception)? **0** |

17. a. INFORMANT'S SIGNATURE: _____
b. NAME IN PRINT: **NELSON A. Lacambra**
c. ADDRESS **16 Rd. Extra 4th Estate Subd. Br. Sn. Dionisio**

18. MOTHER'S MAILING ADDRESS (Number, Street, City or Municipality, Province)

**ATTENDANT AT BIRTH**

19. I hereby certify that I attended the birth of this child who was born alive at **7115** o'clock A.M. P.M. on the date above indicated.

a. SIGNATURE: _____
b. NAME IN PRINT: _____
c. ADDRESS: _____

d. DATE SIGNED BY ATTENDANT AT BIRTH: **September 27, 1965**

TITLE OF ATTENDANT AT BIRTH:
☐ M. D.   ☐ MIDWIFE
☐ NURSE   ☐ OTHERS (Specify)

20. RECEIVED IN THIS OFFICE OF THE LOCAL CIVIL REGISTRAR BY:
a. SIGNATURE: _____
b. NAME IN PRINT: _____
c. TITLE OR POSITION: **SEP 28 1965**
d. DATE:

21. a. GIVEN NAME ADDED FROM SUPPLEMENTAL REPORT:

b. DATE WHEN GIVEN NAME WAS SUPPLIED:

**0320**

| 22a. LENGTH OF PREGNANCY **37** COMPLETED WEEKS | 22b. WEIGHT AT BIRTH **6 1/2** Lbs. **0** Oz. | 23. LEGITIMATE ☒ YES ☐ NO |
|---|---|---|

24. DATE AND PLACE OF MARRIAGE OF PARENTS (For legitimate birth) **June 18, 1964** **Pandacan, Manila**
(Month) (Date) (Year)
City or Municipality _____ Province _____

25. THIS CERTIFICATE IS PREPARED BY:
SIGNATURE: _____
NAME IN PRINT: _____
TITLE OR POSITION: **Record Clerk**
DATE: **Sept. 27, 1965**

19—239   (SPACE FOR MEDICAL AND HEALTH ITEMS AND SPECIAL PURPOSES)

---

07754-D6-991MCC-02529-BI002

BEST POSSIBLE IMAGE



T08007754991025290325202 1002

U0700161037

BReN
[03910-A65SR3F-1]

Documentary
Stamp Tax Paid



CLAIRE DENNIS S. MAPA, Ph. D.
National Statistician and Civil Registrar General
Philippine Statistics Authority

# EXHIBIT F



REPUBLIC OF THE PHILIPPINES
DEPARTMENT OF FOREIGN AFFAIRS
**AFFIDAVIT OF SUPPORT**

**NOT FOR SALE**

Foreign Service Post: _____

DATE
(Ex. January 01, 2012)

## AFFIDAVIT OF SUPPORT

I, _____ , _____ citizen,

of legal age, holder of passport no. _____ , and presently residing at

_____

after having been duly sworn to in accordance with the law, do hereby depose and say:

1. That I am presently working as a/an _____

    at _____ with address at

    _____ ;

2. That I would like to invite my _____ ,

    _____ ,

    Filipino national, of legal age, and presently residing at _____

    _____ , Philippines,

    to come and visit in _____ ;

3. That I will take full responsibility for all his/ her expenses, subsistence and accommodation throughout the duration of his/her stay and ensure that he/she will not become a public charge while on travel;

4. That I am executing this affidavit for whatever legal purpose it may serve.

    IN WITNESS WHEREOF, I hereby affix my signature this _____ day of _____

in the year _____ in _____ .

**PHILIPPINE EMBASSY** )
**CONSULAR SECTION** ) S.S.
_____ )

_____
**Signature of Affiant**

SUBSCRIBED AND SWORN to before me this _____ day of _____ in the year _____

in _____ , affiant having exhibited to me his/her _____ passport no. _____

issued in _____ on _____ and valid until _____ .

Doc. No: _____
Service No.: _____
O.R. No.: _____
Fee Paid: _____

# EXHIBIT G



# EXHIBIT H



Riders  **AMTRAK**  Baggage

**REFUND RECEIPT**

Name of Passenger  02 TKTS RFND/  2289139545617
2289139545625

| | |
|---|---|
| ORIG AMT PAID | 58.70 |
| USED PORTION | 0.00 |
| FORFEITED AMOUNT | 0.00 |
| EXC VOUCHER | 0.00 |
| CANCEL FEE | 14.67 |
| CASH REFUND | 44.03 |

Form of Payment

Rail Fare                      Accom Charge

Fare Plans                    Total

**AGENT:   9139**   No. of

**17AUG21/1029A  SNA** Reservation #

PASSENGER RECEIPT

# EXHIBIT I

# PHILIPPINE
# CONSULATE
# GENERAL
3435 WILSHIRE BLVD., SUITE 550
LOS ANGELES, CALIFORNIA 90010
TEL: (213) 639-0980

DATE              09/07/2021              TUE
>>>>> OR#                             129017
      385-88 LACAMBRA ROBERT NELSO
      2 X            @ 25.00
      AUTH/ACK                      $50.00
      2 X            @ 10.00
      EXPEDITE FEE                  $20.00
      TOTAL             $70.00
      CASH              $70.00
      * TRANS# 0167 *
NO.199167 REG01 1 EMPLOYEE   TIME 09:41
      STRICTLY NO REFUND
                   C2

# EXHIBIT J



# EXHIBIT K

**DEPARTMENT OF FOREIGN AFFAIRS**
Office of Consular Affairs
Revised as of 06 JUNE 2020

# PHILIPPINE CONSULATE GENERAL
# LOS ANGELES, CALIFORNIA

**PASSPORT APPLICATION FORM**
THIS FORM IS NOT FOR SALE

*B.C*
*poon L.C.P*

INSTRUCTIONS:
- Read CAREFULLY.
- Please PRINT entries legibly using black or blue ink only.
- Supply the necessary information.
- Indicate "N/A" for entries with no answers.
- Tick boxes as appropriate.

| ADULT APPLICANT *(Check One)* | MINOR APPLICANT** **Below 18 years old (Check One) |
|---|---|
| ☐ NEW APPLICANT | ☐ NEW APPLICANT |
| ☐ RENEWAL | ☐ RENEWAL |
| ☑ LOST PASSPORT | ☐ LOST PASSPORT |
| ☐ DUAL CITIZEN UNDER R.A. 9225 | ☐ DUAL CITIZEN UNDER R.A.9225 |

## APPLICANT'S PASSPORT DETAILS

| LATEST PASSPORT NUMBER | DATE ISSUED | STATUS OF CURRENT PASSPORT *(CHECK ONE; LEAVE BLANK IF NEW PASSPORT APPLICANT)* |
|---|---|---|
| | | ☐ Passport Intact  ☐ Lost Valid Passport  ☑ Lost Expired Passport  ☐ Damaged Passport |

## APPLICANT'S IDENTITY

| NAME TO BE PRINTED IN YOUR NEW PH PASSPORT | LAST NAME | FIRST NAME (INCLUDE SUFFIX, I.E. JR.,III etc.) | MIDDLE NAME |
|---|---|---|---|
| | LACAMBRA | ROBERTo NELSON | LAGDAMEO |

| SEX (CHECK ONE) ☑ MALE ☐ FEMALE | DATE OF BIRTH (MONTH-DAY-YEAR) (EX. JULY 23 1962) SEPTEMBER 25, 1965 | PLACE OF BIRTH (IF BORN WITHIN THE PHILIPPINES, WRITE THE MUNICIPALITY/CITY AND PROVINCE. IF BORN OUTSIDE THE PHILIPPINES, WRITE THE COUNTRY) MAKATI, PHILIPPINES |
|---|---|---|

| CIVIL STATUS | ☐ SINGLE  ☐ MARRIED  ☐ WIDOW/ER  ☐ ANNULLED/NULLIFIED BY PHILIPPINE COURT  ☑ DIVORCE/ANNULMENT RECOGNIZED BY PHILIPPINE COURT |
|---|---|
| NAME OF APPLICANT'S SPOUSE | SPOUSE'S CITIZENSHIP |

| ARE THERE CHANGES IN YOUR NAME? (CHECK ONE) ☐ YES ☑ NO | REASONS FOR NAME CHANGE (CHECK ONE; PRESENT CERTIFIED COPY) ☐ PH GOVT REPORTED MARRIAGE ☐ PH COURT ORDER | FEMALE APPLICANT OPTED TO USE MAIDEN SURNAME | ☐ YES (IF YES, APPLICANT TO PUT INITIALS HERE :) ☐ NO |
|---|---|---|---|

## APPLICANT'S CONTACT INFORMATION *(FOR MINORS, INDICATE PARENT/GUARDIAN'S CONTACT INFORMATION)*

| U.S. HOME ADDRESS | HOMELESS | | | |
|---|---|---|---|---|
| PHONE NUMBER | EMAIL robertsjustice@live.com | EMERGENCY CONTACT INFORMATION | NAME NELSON LACAMBRA | PHONE NUMBER |

## APPLICANT'S PARENTAL HISTORY

| FATHER (FILL UP EVEN IF DECEASED; N/A IF UNKNOWN) | LAST NAME LACAMBRA | FIRST NAME NELSON | MIDDLE NAME AGCAOILI | CITIZENSHIP AT THE TIME OF APPLICANT'S BIRTH FILIPINO |
|---|---|---|---|---|
| MOTHER (FILL UP EVEN IF DECEASED; N/A IF UNKNOWN) | MAIDEN LAST NAME LAGDAMEO | FIRST NAME LINDA | MIDDLE NAME KIRKWOOD | CITIZENSHIP AT THE TIME OF APPLICANT'S BIRTH FILIPINO |

## MODE OF ACQUIRING PHILIPPINE CITIZENSHIP *(CHECK ONE)*

☑ BY BIRTH TO FILIPINO PARENT/S  ☐ BY NATURALIZATION AS A FILIPINO  ☐ BY ELECTION AS A FILIPINO  ☐ BY RECOGNITION AS A FILIPINO  ☐ BY DUAL CITIZENSHIP UNDER R.A. 9225

| BIRTH STATUS (CHECK ONE) | ☑ LEGITIMATE | ☐ ILLEGITIMATE | ☐ LEGITIMATED BY PARENTS SUBSEQUENT MARRIAGE |
|---|---|---|---|

| ARE YOU CURRENTLY A CITIZEN OF ANOTHER COUNTRY? | DID YOU EVER LOSE YOUR PHILIPPINE CITIZENSHIP? | HAVE YOU SERVED IN ANY FOREIGN MILITARY? |
|---|---|---|
| ☐ YES (IF YES, FROM WHAT COUNTRY?) ☑ NO | ☐ YES (IF YES, FROM WHAT COUNTRY?) ☐ NO | ☐ YES (IF YES, FROM WHAT COUNTRY?) ☑ NO |

| DISTINGUISHING MARKS ON THE FACE | TANNED BECAUSE OF HOMELESS LIVING |
|---|---|

## FOR MINOR APPLICANTS ONLY:

| Is the Minor subject of an adoption proceeding or in the partial/full care and custody of an orphanage? ☐ YES. (IF YES, PLEASE PROVIDE PERTINENT DOCUMENTS) ☐ NO | Is there any court order or legal arrangements pertaining to the Minor? ☐ YES. (IF YES, PLEASE PROVIDE PERTINENT DOCUMENTS) ☐ NO |
|---|---|

All passport applications processed after 19 March 2020 will be released by mail only.
Kindly bring along with your other documents, a USPS envelope that is self-addressed with sufficient prepaid postage for USPS tracking.

## DECLARATION OF APPLICANT OR PARENT/GUARDIAN OF MINOR APPLICANT

I HEREBY DECLARE AND AFFIRM THAT (1) I/the minor applicant am/is a Filipino citizen; (2) I am the parent or legal guardian of the minor applicant; (3) The information provided in this application is true and correct; (4) The attached supporting documents are authentic; (5) I consent to the verification by the Philippine Government of the information I provided to establish my/the minor applicant's personal particulars and further consent to the use of said information for any lawful purpose; (6) I am aware that the information provided in this application will be treated in accordance with relevant privacy regulations; (7) I am aware that under the law, I/the applicant am/is only allowed to hold one valid regular Philippine passport at a given time; (8) I am aware that making false statements in this passport application and furnishing falsified or forged documents are punishable by fine or imprisonment, and grounds for suspension or denial of application; (9) I understand and accept that the release of the passport could be subject to delay due to unforeseen events beyond the control of the Department of Foreign Affairs.

*Lacambra*
ROBERT LACAMBRA
SIGNATURE OVER PRINTED NAME OF APPLICANT OR PARENT/LEGAL GUARDIAN
DATE SIGNED: 09/05/'21

| DO NOT WRITE BELOW THIS LINE, FOR THE CONSULATE GENERAL'S USE ONLY. | | | |
|---|---|---|---|
| REMARKS AFFIDAVIT OF LOSS + BIRTH CERT - ID | PASSPORT WATCHLIST VERIFICATION: | RETURNED CANCELLED PASSPORT | RELEASED NEW PASSPORT |
| PROCESSOR'S SIGNATURE | ENCODER'S SIGNATURE | Applicant /Representative or Parent/Legal Guardian's Signature over Printed Name DATE: | Applicant /Representative or Parent/Legal Guardian's Signature over Printed Name DATE: |

# EXHIBIT L

Municipal Form No. 102 - (Revised Dec. 1, 1968)

(TO BE ACCOMPLISHED IN DUPLICATE)

REPUBLIC OF THE PHILIPPINES

## CERTIFICATE OF LIVE BIRTH

(FILL OUT COMPLETELY, ACCURATELY, LEGIBLY IN INK OR TYPEWRITER)

Register Number:

Province: **Manila**

City or Municipality:

(a) Civil Registrar-General No.

(b) Local Civil Registrar No. **518** (165)

| 1. PLACE OF BIRTH | 2. USUAL RESIDENCE OF MOTHER (Where does mother live?) |
|---|---|
| a. PROVINCE | a. PROVINCE **Rizal** |
| b. CITY OR MUNICIPALITY **1655 M. Adriatico, Malate, Manila** | b. CITY OR MUNICIPALITY **San Dionisio, Parañaque** |
| c. NAME OF HOSPITAL OR INSTITUTION (If not in hospital, give street address) **Clinica de la Rosa** | c. NUMBER AND STREET **16 Road Extra, Fourth Estate Subd.** |
| d. IS PLACE OF BIRTH INSIDE CITY LIMITS? YES ☒ NO ☐ | d. IS RESIDENCE INSIDE CITY LIMITS? YES ☐ NO ☒  e. IS RESIDENCE ON A FARM? YES ☐ NO ☐ |

### CHILD

| 3. NAME (Type or print) | First **Roberto Nelson** | Middle **Lagdameo** | Last **Lacambra** |
|---|---|---|---|
| 4. SEX **male** | 5a. THIS BIRTH SINGLE ☒ TWIN ☐ TRIPLET ☐ | 5b. IF TWIN OR TRIPLET, WAS CHILD 1ST ☐ 2ND ☐ 3RD ☐ | 6. DATE OF BIRTH Month **Sept** Day **25** Year **1965** |

### FATHER

| 7. NAME First **Nelson** Middle **Agcaoili** Last **Lacambra** | 8. RELIGION **R. Catholic** | 8a. NATIONALITY **Filipino** | 8b. RACE **Brown** |
|---|---|---|---|
| 9. AGE (At time of this birth) **29** Years | 10. BIRTHPLACE **Baguio City, Mt. Province** | 11a. USUAL OCCUPATION **Advertising Executive** | 11b. KIND OF BUSINESS OR INDUSTRY **Nation Ad Philippines** |

### MOTHER

| 12. MAIDEN NAME First **Lydia** Middle **Kirkwood** Last **Lagdameo** | 13. RELIGION **R. Catholic** | 13a. NATIONALITY **Filipino** | 13b. RACE **Brown** |
|---|---|---|---|
| 14. AGE (At time of this birth) **27** Years | 15. BIRTHPLACE **Quiapo, Manila** | 16. PREVIOUS DELIVERIES TO MOTHER (Do not include this birth) | |

| | a. How many children are now living? | b. How many other children were born alive but are now dead? | c. How many fetal deaths (fetuses born dead any time after conception)? |
|---|---|---|---|
| | **0** | **0** | **0** |

17a. INFORMANT'S SIGNATURE:

b. NAME IN PRINT: **NELSON A. Lacambra**

c. ADDRESS: **16 Rd. Extra. 4th Estate Subd. Br. Sn. Dionisio**

18. MOTHER'S MAILING ADDRESS (Number, Street, City or Municipality, Province) **Nation Ad Metro**

### ATTENDANT AT BIRTH

19.

I hereby certify that I attended the birth of this child who was born alive at **7:15** o'clock A.M. on the date above indicated.

d. DATE SIGNED BY ATTENDANT AT BIRTH **September 27, 1965**

a. SIGNATURE:

b. NAME IN PRINT:

c. ADDRESS:

e. TITLE OF ATTENDANT AT BIRTH ☐ M. D. ☐ MIDWIFE ☐ NURSE ☐ OTHERS (Specify)

| 20. RECEIVED IN THE OFFICE OF THE LOCAL CIVIL REGISTRAR BY: | 21. a. GIVEN NAME ADDED FROM SUPPLEMENTAL REPORT: |
|---|---|
| c. SIGNATURE: | |
| b. NAME IN PRINT: | b. DATE WHEN GIVEN NAME WAS SUPPLIED: |
| a. TITLE OR POSITION: **SEP 28 1965** | |
| d. DATE: | |

| 22a. LENGTH OF PREGNANCY **37** COMPLETED WEEKS | 22b. WEIGHT AT BIRTH **6 1/2** Lbs. **0** Oz. | 23. LEGITIMATE? ☒ YES ☐ NO |
|---|---|---|

| 24. DATE AND PLACE OF MARRIAGE OF PARENTS (For legitimate birth) **June 18, 1964** **Pandacan, Manila** (Month) (Date) (Year) City or Municipality _____ Province _____ | 25. THIS CERTIFICATE IS PREPARED BY: SIGNATURE: NAME IN PRINT: TITLE OR POSITION: **Record Clerk** DATE: **Sept. 27, 1965** |
|---|---|

19—839

(SPACE FOR MEDICAL AND HEALTH ITEMS FOR SPECIAL PURPOSES)

07754-D6-991MCC-02529-BI002

BEST POSSIBLE IMAGE



T080077549910252903252021002

U0700161037

BReN

[03910-A65SR3F-1]

Documentary
Stamp Tax Paid

**CLAIRE DENNIS S. MAPA, Ph. D.**
National Statistician and Civil Registrar General
Philippine Statistics Authority

# EXHIBIT M



# EXHIBIT N



# EXHIBIT O



# EXHIBIT P



CONSULATE GENERAL OF THE REPUBLIC OF THE PHILIPPINES
LOS ANGELES

## ACKNOWLEDGMENT

BEFORE ME, **MARIA ALNEE A. GAMBLE, CONSUL** in the City of Los Angeles, California, U.S.A., on this day of **07 SEP 2021**, personally appeared:

### ROBERT NELSON L. LACAMBRA

with **CALIFORNIA DL NO. C3301950 EXP ON 25 SEPTEMBER 2025** known to me to be the same person(s) who executed the annexed instrument of **SPECIAL POWER OF ATTORNEY** and being informed by me of the contents of said instrument, he/she/they acknowledged and swore before me that he/she/they executed the same of his/her/their own free will and deed for the use and purpose therein set forth.

For the contents of the annexed document, this Consulate General assumes no responsibility.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Consulate General of the Republic of the Philippines in Los Angeles, California, U.S.A., on the above date.

**MARIA ALNEE A. GAMBLE**
Consul

Republic of the Philippines

| | | |
|---|---|---|
| Fee Paid | : | $25.00 |
| O.R. No. | : | 129017 |
| Service No. | : | 385 |
| Doc. No. | : | 6193 |
| Page No. | : | 166 |
| Series of | : | 2021 |

QR CODE

*TO VERIFY THIS ACKNOWLEDGMENT, SCAN THE QR CODE ABOVE USING ANY QR SCANNER APP INSTALLED ON YOUR MOBILE PHONE*

""This document is not valid if seal is removed or altered in any way whatsoever.""

## SPECIAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

ROBERT NELSON L. LACAMBA AKA

That I, **ROBERTO NELSON L. LACAMBRA**, of legal age, Filipino, and presently homeless in the City of Orange and whose mailing address is General Delivery 1075 N. Tustin St. Orange CA 92863, do hereby name, constitute and appoint, and by these presents, have **NAMED, CONSTITUTED** and **APPOINTED** my cousin **LINDA ROSE L. PEDERO**, of legal age, married, Filipino, and with residence and postal address in 39 Firefly St. Unit 304, Vine Villas Condominium, Valle Verde 6, Pasig City 1604, to our true and lawful attorney-in-fact for us and in our names, place, and stead, and for our own use and benefits, to do and perform any of the following acts:

1. To make, sign or execute Deed of Extra-Judicial Settlement of Estate of Aurora Lagdameo and Adela Lagdameo, and the Deed of Partition/Segregation of Estate of Aurora Lagdameo and Adela Lagdameo, in my capacity being one of the heirs of Linda K. Lagdameo who in turn was one of the heirs Aurora and Adela Lagdameo, consisting of real property situated in Barangay Calimpak, Guinayangan, Quezon, Philippines;

2. To make, sign or execute represent me in the pending case for Expropriation under Special Civil Action No. 1205-C pending before the Regional Trial Court of Calauag, Quezon, and to represent us in the negotiation for the termination of the case, with authority to make, sign or execute Compromise Agreement, subject to such reasonable terms that may be agreed upon by parties, in order to terminate the said case;

3. To offer and negotiate for sale with prospective buyer/s my share as one of the heirs of Linda K. Lagdameo in the real property covered by Transfer Certificate of Title No. T-63020, situated in Brgy. Calimpak, Guinayangan, Quezon, with authority to make, execute or sign in a deed of conveyance for my aforesaid share, and to perform such other task as may be required or necessary for the purposes this authorization is issued.

**HEREBY GIVING AND GRANTING** unto my said attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do as if personally present, with all the power of substitution and revocation, and hereby ratifying and confirming all that my said attorney or her substitute shall lawfully do or cause to be done as if I were personally present.

IN WITNESS WHEREOF, I have hereunto set our hand this ⁷ᵀᴴ day of SEPTEMBER , 2021 at LOS ANGELES, CA USA

Placambh. —

ROBERT NELSON L. LACAMBRA
**ROBERTO NELSON L. LACAMBRA**
        Principal

With my conformity:

**LINDA ROSE L. PEDERO**
        Attorney-in-fact

_____ Witnesses _____



# EXHIBIT Q

## AFFIDAVIT OF LOSS OF PASSPORT

The undersigned, Filipino citizen, single/married, presently residing at HOMELESS IN THE CITY OF ORANGE after having duly sworn to in accordance with law, hereby deposes and says:

That the undersigned was issued Philippine Passport No. UNKNOWN by the Department of Foreign Affairs in Manila/Consular Extension Office/Philippine Embassy/Consulate in MANILA on UNKNOWN ;

That said passport was lost on 2008 OR 2009 under the following circumstances:

I HAD JUST RECENTLY BECOME HOMELESS AT THE TIME.
MY BELONGINGS WERE STORED AT THE ALISO VIEJO
SELF STORAGE. UNABLE TO PAY THE RENT, THEY FORECLOSED
ON MY UNIT. ALL MY STORED BELONGINGS WERE TAKEN
INCLUDING MY PASSPORT.

That the undersigned exerted all efforts possible to locate said passport to no avail;

That the undersigned fully understands that the said passport is automatically deemed cancelled upon declaration of loss, and that if found, it can no longer be used;

That undersigned is executing this affidavit of loss in connection with his/her present application for a new passport;

That further Affiant/s sayeth none.

IN WITNESS WHEREOF, undersigned hereby affixes his/her signature this ____TTH____ day of SEPTEMBER in LOS ANGELES, , USA.
CA

**Affiant**

SUBSCRIBED AND SWORN to before me this _____ day of _____ in _____, USA. The Affiant having exhibited to me his/her Identification card No. _____ issued on _____ at _____.

See attached notary certificate

*Administering Officer/Notary Public*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this __07__ day of ___September__ 20_21_

by ___Robert Nelson L. LACAMBRA____

who proved to me on the basis satisfactory evidence to be the person(s) who appeared before me.

Signature ___Judy A. Layland___

**AFFIDAVIT OF LOSS OF PASSPORT**

JUDY A. LAYLAND
COMM. # 2226941
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. JAN. 26, 2022

# EXHIBIT R

Mailbox It of Orange
655 S Main St Ste 200
ORANGE, CA 92868
714-543-6245


Renew Mailbox #160            72.00
  Term: 9/17/21 to 3/17/22

    SUBTOTAL                  72.00
    TAX                        0.00
    TOTAL                     72.00
TEND Cash                     72.00

Total shipments: 0
Robert Lacambra: Box 160
                          09/22/2021
#48400                     10:02 AM
Workstation: 0 -


************************************
Thank you for your business
************************************